

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

*Rod J. Rosenstein*
*United States Attorney*

*Christina A. Hoffman*
*Assistant United States Attorney*

*36 South Charles Street*
*Fourth Floor*
*Baltimore, Maryland*
*21201*

DIRECT: 410-209-4871
MAIN: 410- 209-4800
FAX: 410-962-3124
TTY/TDD: 410-962-4462
*Christina.Hoffman@usdoj.gov*

March 17, 2017

Gerald Ruter
9411 Philadelphia Road, Suite O
Baltimore, MD 21237
Tel: (410) 238-8000
Email: ruterlaw@verizon.net

Re:   *United States v. Jarmal Harrid*, Crim. No. CCB-16-0267

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by March 31, 2017, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.   The Defendant agrees to plead guilty to Count One and Count Two of the Superseding Indictment, in which he is charged with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), and conspiracy to distribute one kilogram or more of heroin and 280 grams or more of cocaine base, in violation of 21 U.S.C. § 846. The Defendant admits that he is, in fact, guilty of these offenses and will so advise the Court.

### Elements of the Offense

2.   The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

Count One: Racketeering Conspiracy, 18 U.S.C. § 1962(d)

That from in or about 2011 continuing until on or about the date of the Superseding Indictment, in the District of Maryland,

  a. an enterprise existed as alleged in the Superseding Indictment;

  b. the enterprise affected interstate or foreign commerce;

  c. the Defendant was associated with or employed by the enterprise; and

  d. the Defendant knowingly and willfully conspired with one or more persons to conduct and participate in the affairs of the enterprise through a pattern of racketeering activity.

Count Two: Drug Trafficking Conspiracy, 21 U.S.C. § 846

That from in or about 2011 continuing until on or about the date of the Superseding Indictment, in the District of Maryland,

  a. an agreement existed between two or more persons to violate the drug laws of the United States by distributing or possessing with the intent to distribute one kilogram or more of heroin and 280 grams or more of cocaine base; and

  b. the Defendant knowingly entered into that agreement.

### Penalties

3. The maximum sentences provided by statute for the offense to which the Defendant is pleading guilty are as follows: for Count One, life imprisonment, a $250,000 fine, and a five-year term of supervised release; and for Count Two, life imprisonment, with a mandatory minimum term of imprisonment of ten years, a $10 million fine, and a five-year term of supervised release. In addition, the Defendant must pay $100 as a special assessment for each count of conviction, pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order the Defendant to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked—even on the last day of the term—and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

### Waiver of Rights

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

   a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified; they would also have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

   c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

   d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court would instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

   e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

   f. By pleading guilty, the Defendant will be giving up all of these rights. The Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of this case. Any statements that the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

   g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

   h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The

Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney and the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5.    The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6.    This Office and the Defendant understand, agree and stipulate to the following statement of facts, which this Office would prove beyond a reasonable doubt:

The Defendant, Jarmal Harrid, a/k/a "J-Rock," a/k/a "PJ," was a member of Murdaland Mafia Piru ("MMP") during the dates of the conspiracy. The Defendant agreed with members of MMP to conduct and participate in the gang's affairs through a pattern of racketeering activity that included offenses involving drug distribution. MMP was an "enterprise" that affected interstate commerce.

The Defendant agrees that the "Overt Acts" in which he is named in the Superseding Indictment represent an accurate sample of his activities in furtherance of the racketeering enterprise.

In particular, on April 16, 2015, in the 1910 block of Oak Drive in Baltimore County, the Defendant, Co-Defendant 1, and an unindicted co-conspirator possessed with intent to distribute heroin and cocaine base. They also led law enforcement officers on a high-speed car chase, during which one of them threw a Smith & Wesson 9mm caliber firearm (serial number PAC7887) from the vehicle. The vehicle eventually lost a wheel and came to a stop, at which point Co-Defendant 1 and the unindicted co-conspirator were apprehended by law enforcement. The Defendant fled on foot, but he was identified by one of the pursuing officers.

On May 8, 2015, law enforcement officers arrested the Defendant on an open warrant stemming from the car chase on April 16, 2015. At the time of his arrest,

the Defendant possessed with intent to distribute approximately 27 grams of cocaine, 24 grams of heroin, and 17 grams of marijuana, and possessed $8,159 in U.S. currency, a scale with suspected drug residue, and drug packaging material.

In June and July 2015, law enforcement officers conducted a court-authorized wiretap of several phones belonging to Co-Defendant 2, as well as a phone belonging to an unindicted co-conspirator. The Defendant was intercepted in numerous calls with Co-Defendant 2 discussing drug transactions and gang business. For instance, on June 20, 2015, at roughly 5:58p.m., investigators intercepted call number D-270 from the Defendant, using phone number (410) 202-7648, to Co-Defendant 2, using phone number (443) 707-5054. In the call, Co-Defendant 2 informed the Defendant that he had just purchased a new supply of heroin from an unindicted co-conspirator, and that a customer of his thought the quality of the heroin was "good . . . like an eight-and-a-half, nine." The Defendant told Co-Defendant 2 he was working on getting a supply of heroin from the unindicted co-conspirator.

On July 20, 2015, investigators executed a state search warrant at 532 Coventry Lane, Apt. 4, in Baltimore, Maryland, a known drug stash house for MMP. There, they recovered roughly 608 grams of heroin, a digital scale, a hydraulic press, and drug packaging materials.

On July 23, 2015, investigators intercepted call number G-232 from Co-Defendant 2, using phone number (323) 594-7941, to the Defendant, using phone number (410) 202-7648. In the call, Co-Defendant 2 advised the Defendant that Co-Defendant 1 and a now-deceased MMP member had been involved in "a shootout" at the BP gas station the previous night, during which they both had been shot.

On July 26, 2015, at roughly 5:18p.m., investigators intercepted call number F-2500 from the Defendant to an unindicted co-conspirator, using phone number (443) 261-7849. In the call, the Defendant agreed to purchase "a whole dollar piece"—which investigators know to be coded language for 100 grams of heroin. The unindicted co-conspirator told the Defendant the heroin was "hard as a rock." The Defendant said he was working on getting the money together.

On July 31, 2015, law enforcement officers executed a state search warrant at the Defendant's residence at 7 Hartley Circle in Owings Mills, Maryland. In the bedroom occupied by the Defendant, they recovered approximately 60 grams of heroin and 26 grams of marijuana, as well as $7,746 in U.S. currency.

In August 2016, investigators applied for and obtained a search warrant for an iCloud account belonging to Co-Defendant 3, wolfmobb@icloud.com. The results of the search warrant include several photographs of the Defendant with other members of MMP, including one in which the Defendant is posing with Co-Defendant 2 and making an MMP gang sign.

The Defendant agrees that he conspired with members of MMP to distribute heroin and cocaine base in furtherance of the gang, and that it was reasonably foreseeable to him that between one and three kilograms of heroin and between 280 and 840 grams of cocaine base would be trafficked by members of MMP.

7. The parties agree and stipulate to the following applicable sentencing guidelines factors:

The parties agree and stipulate that pursuant to U.S.S.G. § 2E1.1(a)(2), the offense level for racketeering conspiracy is the greater of offense level 19 or the offense level applicable to the underlying racketeering activity

The parties agree and stipulate that pursuant to U.S.S.G. § 1B1.3, the underlying racketeering activities in this case involve acts, committed, aided, abetted, counseled, commanded, induced, or willfully caused by the Defendant, as well as all those acts reasonably foreseeable to him in furtherance of the jointly undertaken criminal enterprise, and include, among others:

   i. Conspiracy to distribute and possess with the intent to distribute heroin and cocaine base, in violation of 21 U.S.C. § 846, and

   ii. Distribution and possession with intent to distribute heroin and cocaine base, in violation of 21 U.S.C. § 841.

With respect to the conspiracy to distribute heroin and cocaine base, the base offense level is 30, pursuant to U.S.S.G. § 2D1.1(c)(5). Pursuant to U.S.S.G. § 2E1.1 n.1, each underlying racketeering offense is treated as a separate count of conviction; however, the racketeering activity involving the conspiracy to distribute controlled substances and distribution and possession with intent to distribute controlled substances (Count One); and the conspiracy to distribute controlled substances (Count Two); are grouped pursuant to U.S.S.G. § 3D1.2(c) and (d). The offense level for the group is **30** pursuant to U.S.S.G. § 2D1.1(c)(5).

This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, pursuant to U.S.S.G. § 3E1.1(a). This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of your client's acceptance of personal responsibility for his conduct. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful to the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

Therefore, this Office and the Defendant agree that the adjusted offense level is **27.**

The Defendant will be free to seek a two-level downward adjustment pursuant to U.S.S.G. § 2D1.1(b)(17) and U.S.S.G. § 5C1.2. The Government will be free to oppose this request.

The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

## Obligations of the United States Attorney's Office

8. At the time of sentencing, this Office will recommend a reasonable sentence. This Office will also move to dismiss any open counts against the Defendant.

9. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Superseding Indictment that this Office has agreed to dismiss at sentencing. The parties will be free to address any facts that inform the application of 18 U.S.C. § 3553.

## Waiver of Appeal

10. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.

   b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that results from arithmetical, technical, or other clear error.

d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

11. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

12. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of his sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and that the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea; rather, he will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what

guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

13.   This letter supersedes any prior understandings, promises, or negotiations between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _Christina Hoffman_
Christina A. Hoffman
Lauren E. Perry
Assistant United States Attorneys

I have read this agreement, including the Sealed Supplement, and I have carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

_5-11-17_
Date

_Jarmal Harrid_
Jarmal Harrid

I am Mr. Harrid's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

_5.11.17_
Date

_Gerald Ruter_
Gerald Ruter