UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : |
| | Crim. No.: CCB-16-cr-267 -25 |
| SYDNI FRAZIER | : |

MOTION TO SUPPRESS EVIDENCE DERIVED FROM
SEARCH OF SOCIAL MEDIA

Defendant, by and through counsel, moves this Honorable Court to suppress all evidence derived from the searches of the defendant's social media accounts. In support he states the following.

RELEVANT FACTS

1. On January 17, 2017, Detective Gary Niedermeir submitted a sworn affidavit seeking a search warrant for Frazier's Facebook account. The warrant issued on the same date.

2. On February 22, 2017, Ivo Louvado, Task Force Officer with ATF, submitted a sworn affidavit seeking a search warrant for Frazier's Instagram account. The warrant issued that same date.

3. Frazier submits that the warrants were improperly issued and any evidence recovered from the searches must be suppressed.

ARGUMENT

I. *The Magistrate Judge Lacked Authority to Issue the Warrants.*[1]

Magistrate Judges are creatures of statute, whose power is limited to that granted by statute. United States v. Cannon, 711 F. Supp. 2d 602, 608 (E.D. Va. 2010); 28 U.S.C. § 636. The Federal Magistrate Act grants Magistrate Judges, in relevant part, the powers conferred by the Federal Rules of Criminal Procedure. 28 U.S.C. §636(a)(1). Rule 41 authorizes "a magistrate judge with authority in the district . . . to issue a warrant to search for and seize a person or property located within the district. Fed. R. Crim. P. 41(b)(1) (emphasis added). The Rule also permits a Magistrate Judge to issue a warrant for property outside the district:

- if the person or property is located within the district when the warrant is issued but might move or be moved outside the district before the warrant is executed;

- in an investigation of domestic terrorism or international terrorism;

- to install within the district a tracking device . . . to track the movement of a person or property located within the district, outside the district, or both;

- for property that is located outside the jurisdiction of any state or district.[2]

---

[1] Defendant credits Paul F. Enzinna, Esq. with the research and composition of this issue.
[2] The authority to issue a warrant for property located outside the jurisdiction of any state or district, is limited to property located within:
(A) a United States territory, possession, or commonwealth;
(B) the premises . . . of a United States diplomatic or consular mission in a foreign state; or
(C) a residence and any appurtenant land owned or leased by the United States and used by United States personnel assigned to a United States diplomatic or consular mission in a foreign state.

Fed. R. Crim. P. 41(b)(5).

As courts across the country have held, none of these applies where, as here, the government in an investigation not related to terrorism seeks a warrant to search a computer located outside the district.

In 2015, the FBI apprehended the administrator of a website dedicated to child pornography – called "Playpen" – and seized control of the website. In order to identify users of the website, the government operated it for several weeks from a location in the Eastern District of Virginia. The FBI then applied to a Magistrate Judge in that District for a warrant to use a "Network Investigative Technique" ("NIT"), which would download instructions to the computers of Playpen users, which instructions caused those users' computers to transmit information to government investigators, allowing them to locate those users. See United States v. Owens, No. 16-CR-38-JPS (Dec. 5, 2016), 2016 WL 7053195 *1-2. This investigation snared a number of Playpen users, many of whose computers were located outside the Eastern District of Virginia, and who moved to suppress evidence seized pursuant to the warrant authorized by that court. Courts in these cases found that the searches violated Rule 41's territorial limits.[3] See, e.g., United States v. Levin, 186 F. Supp. 3d 26 (D. Mass. 2016); United States v. Workman, 205 F. Supp. 3d 1256 (D. Colo. 2016); United States v. Croghan, 209 F. Supp. 3d 1080 (S.D. Iowa 2016); United States v. Arterbury, No. 15–cr–182–JHP (N.D. Okla. May 17,

---

[3] In 2016, Rule 41(b) was amended to grant Magistrate Judges authority to issue a warrant to use remote access to search electronic storage media or information outside that district if the location of the media or information "has been concealed through technological means" and, in certain circumstances, in investigations under 18 U.S.C. § 1030(a)(5). Fed. R. Crim. P. 41(b)(6). This amendment, which appears intended to authorize searches like those at issue in the Playpen cases, is inapplicable here, because the location of the property to be searched was not concealed, and the investigation did not involve 18 U.S.C. § 1030(a)(5).

3

2016); United States v. Kahler, No. 16-cr-20551 (E.D. Mich. Feb. 14, 2017, 2017 WL 586707 *4 nn.5-6 (listing cases); Owens, No. 16-CR-38-JPS 2016 WL 7053195 *6 (listing cases); see also In re warrant to Search a Target Computer at Premises Unknown, 958 F. Supp. 753 (S.D. Tex. 2013) (refusing to authorize search of computer located in a foreign country). Courts in each of these cases held that a Magistrate Judge simply lacks authority to authorize the search of a computer located outside the District in which the Magistrate Judge sits.

The Magistrate Judge in this case purported to authorize exactly that – searches of computers located outside the District of Maryland. In fact, the applications for the Social Media Warrants specified that they sought access to "property located in the Northern District of California," but the agents seeking these warrants did not assert that their proposed search involved any of the circumstances under which Rule 41(b) authorizes a Magistrate Judge to issue a warrant to search property in another district, and the Magistrate Judge made no such finding. In sum, the Magistrate Judge had no authority to issue the Social Media Warrants, which were void ab initio, and the evidence seized in the resulting searches must be suppressed.

II. *There Was no Probable Cause for the Searches*

A. The Facebook Account

This warrant seeks social media information to be used in the murder of Ricardo Johnson. [Frazier-0368 to 0267]  Detective Niedermeier set out his expertise in his affidavit.  The detective has been a member of the Baltimore Police

4

Department for 20 years.  He has been involved in the search of cell phones and cell phone tracking.  He has training and expertise in "modern cellular communications devices ... often called smart phones, [which] contain cutting edge technology which was once only found in computers."  He does not specify any training regarding cell phones nor does he explain his "expertise."   Detective Niedermeier has "executed more than 30, search and seizure warrants, pertaining to 'Smart Phones' during homicide investigations."  He also has participated in the execution of search and seizure warrants as well arrests for narcotics violations.  [Frazier-0369]  Most striking in its absence is the detective's "Expertise" in any training or knowledge of Facebook, the very medium he seeks to search.  The detective states at the conclusion of his affidavit, "Your Affiant *believes* that based on the above listed information, the Facebook account [of Sydni Frazier] has crucial evidence as it relates to the murder of Ricardo Johnson."  [Frazier-0371] [emphasis added]

Unfortunately for the government, beliefs alone cannot carry the day.  There must be something in the affidavit to support that belief.  Without that, there was no probable cause to search the Facebook account and any alleged evidence recovered must be suppressed.

B.  The Instagram Account

Task Force Officer Ivo Louvado provided basically the same affidavit he provided for the search of Frazier's residence, the DNA search, and the cell phone searches. [Frazier 0417 to 0420]  In this affidavit, he added a section on "General Information Regarding Instagram"  and "General information regarding Use of

5

Instagram by Individuals involved in Drug Trafficking and Criminal Gangs."

While it is true that an investigative officer may "[d]raw on their own experiences and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person,'" United States v. Arvizu, 534 U.S. 266, 273 (2002) (quoting United States v. Cortez, 449 U.S. 411, 418 (1981)), a Magistrate Judge may not rely on that "training and experience" without knowing whether it is sufficient to justify reliance. For example, the "training and experience" of a 20-year veteran officer might justify reliance, while that of an officer on her first day on the job might not.

In his affidavit, however, Officer Louvado provided no such information. He nowhere describes his "training and experience" regarding drug traffickers and criminal gangs and their use of social media, or how he concludes that searches of social media will likely contain evidence of criminal activity. As a result, the Magistrate Judge had no basis for reliance on Officer Louvado's "training and experience" to link the social media accounts to criminal activity.

Further, the affidavit is devoid of any facts from which the Magistrate Judge could conclude that Frazier was involved was an "individual[] involved in drug trafficking" or was a member of a criminal gang.

Moreover, the good faith exception does not apply. The "good faith exception to the exclusionary rule" is that if police officers conduct a search in good faith relying on a search warrant received from a neutral and detached magistrate, the evidence seized is admissible, even though the magistrate mistakenly determined

6

probable cause existed when it did not. There are exceptions to this rule. They are: (1) if the police lied to the magistrate in order to obtain the search warrant; (2) if the magistrate was biased in favor of the police and gave up his neutral role as a judicial official; (3) if a reasonably trained police officer could look at the affidavit and determine that it was not reasonable to believe that probable cause existed; and (4) if a review of the search warrant shows that it is either not complete or invalid on its face. If any of those circumstances existed, the good faith exception could not be used. *United States v. Leon*, 468 U.S. 897, 916 (1984).

In this case, a reasonably trained police officer could look at the affidavit and determine that it was not reasonable to believe that probable cause existed. Therefore, there was no good faith exception.

WHEREFORE, Defendant requests that this Motion be granted and all evidence recovered from the social media accounts suppressed.

Respectfully submitted,

/s/_____
Christopher M. Davis #23441
Counsel for Sydni Frazier

Davis & Davis
1350 Connecticut Avenue, NW
Suite 202
Washington, DC 20036
202.234.7300

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of this motion was served upon all counsel of record via the Court's CM/ECF System on this 24th day of August 2017.

                /s/_____
                Christopher M. Davis