**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No.  CCB-16-267** |
| | : | |
| **DWIGHT JENKINS** | : | |
| | : | |
| **Defendant.** | : | |

---

**MEMORANDUM IN SUPPORT OF EMERGENCY MOTION
FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

Dwight Jenkins, by and through undersigned counsel appointed under the CJA, respectfully moves this Court to grant his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on the "extraordinary and compelling reasons" presented by his vulnerability to COVID-19.  Mr. Jenkins hereby adopts, as if fully set forth herein, his *pro se* motion for release, previously filed herein.  ECF 1495.

Mr. Jenkins suffers from Graves disease, a thyroid condition, and is borderline diabetic and has high cholesterol and blood pressure.  Mr. Jenkins also suffers from a severe chronic ulcerative and recurring infection condition of his lower right leg, having lost a portion of the bone due to a gunshot wound.  ECF 1495 at 2.  Undersigned counsel is aware of this condition based upon personal knowledge, having seen it while he represented Mr. Jenkins on the underlying charges in this matter, which led to the present incarceration upon his guilty plea.  These conditions place him at serious risk of becoming severely ill from COVID-19.  Furthermore, Mr. Jenkins is designated to FCI Ft. Dix, where Mr. Jenkins avers that there are over 40 inmates and 3 staff members infected with COVID-19.  ECF 1495 at 5.   As Judges Bennett and Chuang of this Court have recently done for inmates medically vulnerable to

1

COVID-19, this Court should issue an order reducing Mr. Jenkins' sentence to time served, or to enter an order permitting him to serve the balance of his sentence on house arrest. *See United States v. Gutman*, Crim. No. RDB-19-069, ECF No. 82 (D. Md. May 13, 2020); *United States v. Mel*, Crim. No. TDC-18-0571, 2020 WL 2041674 (D. Md. Apr. 28, 2020); *United States v. Winston*, Crim. No. RDB-13-0639, ECF No. 294 (D. Md. Apr. 28, 2020). As the Court can verify independently via the BOP website, Mr. Jenkins' release date is due in April, 2025, a date which will move closer as time passes.

## STATEMENT OF FACTS

Mr. Jenkins adopts the prior recitation of the procedural background of this case and his motion. ECF 1495 at 1-2. Mr. Jenkins has been in federal custody continuously since September 27, 2016. He received a sentence of 10 years, which he currently is serving, on April 17, 2017.

Mr. Jenkins adopts the prior recitation of his medical history, discussed *supra* and at ECF 1495 at 2. Mr. Jenkins, counsel would aver upon information and belief, presently is 52 years of age.

On March 29, 2020, Mr. Jenkins filed a request for reduction in sentence with Warden Ortiz of FCI Ft. Dix. ECF 1495-1. The request has yet to be addressed, with more than thirty days having elapsed since the request was made and Mr. Jenkins having not received a decision from the warden. Thus, he has satisfactorily pursued his administrative remedies, as required by 18 U.S.C. § 3582(c)(1)(A).

## BACKGROUND

Congress first enacted 18 U.S.C. § 3582(c)(1) as part of the Comprehensive Crime Control Act of 1984 to serve as a "safety valve" for judges to assess whether a sentence reduction was warranted by factors that previously would have been addressed through the

abolished parole system. S. Rep. No. 98-225, at 121 (1983). "This legislative history demonstrates that Congress, in passing the Comprehensive Crime Control Act of 1984, intended to give district courts an equitable power to employ on an individualized basis to correct sentences when 'extraordinary and compelling reasons' indicate that the sentence initially imposed on an individual no longer served legislative objectives." *United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at * 5 (S.D.N.Y. Apr. 6, 2020).

The compassionate release statute empowered courts to reduce a defendant's sentence whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Congress delegated to the U.S. Sentencing Commission the responsibility of defining what were "extraordinary and compelling reasons." *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."). However, it was not until 2007, more than two decades after the statute was enacted, that the Commission responded. It issued a guideline stating that "extraordinary and compelling reasons" include medical conditions, age, family circumstances, and "other reasons." USSG § 1B1.13, app. n.1(A)-(D).

Relative to Mr. Jenkins' request for compassionate release, Application Note 1(A)(ii) to USSG § 1B1.13 states extraordinary and compelling reasons include when

> The defendant is—
> (I)     suffering from a serious physical or medical condition;
> (II)    suffering from a serious functional or cognitive impairment; or
> (III)   experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 app. n. 1(A)(ii).  Although Mr. Jenkins has not yet served 75 percent of his sentence, it is also worth noting that Application Note 1(B) identifies extraordinary and compelling reasons to include when "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."  Furthermore, Application Note 1(D) created a catch-all provision, for when the Director of the BOP determined "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."

As originally enacted, the statute left sole discretion for filing compassionate release motions with the Director of the BOP, who adopted a program

statement governing compassionate release that in many ways narrowed the criteria established by the Commission.  *See* BOP Program Statement 5050.49.  During the span of more than three decades, the BOP rarely filed motions on behalf of inmates who met the eligibility criteria.  The Office of the Inspector General for the Department of Justice concluded in 2013 that "[t]he BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered."  Dep't of Justice, Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* (April 2013), at 11, available at https://oig.justice.gov/reports/2013/ e1306.pdf; *see also* Dep't of Justice, Office of the Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* (May 2015), at 51, available at https://oig.justice.gov/ reports/2015/e1505.pdf#page=1 ("Although the BOP has revised its compassionate release policy to expand consideration for early release to aging inmates, which could help mitigate the effects of a growing aging inmate population, few aging inmates have been released under it.");

4

U.S.S.G. § 1B1.13, app. n.4 (admonishing BOP for its past failure to pursue relief on behalf of eligible inmates).  Heeding this criticism, Congress acted.

The title of Section 603(b) of the First Step Act—"Increasing the Use and Transparency of Compassionate Release"—leaves no doubt as to Congress' intent in modifying 18 U.S.C. § 3582(c)(1)(A).  Through the First Step Act, enacted December 21, 2018, Congress sought to resuscitate compassionate release by, *inter alia*, allowing defendants to directly petition courts for relief, rather than leaving that power solely in the hands of the BOP.  *See* 18 U.S.C. § 3582(c)(1)(A).  "[U]nder the amended statute, a court may conduct such a review also 'upon motion of the defendant,' if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed 'from the receipt of such a request by the warden of the defendant's facility,' whichever is earlier."  *United States v. Decator*, No. CCB-95-0202, 2020 WL 1676219 (D. Md. Apr. 6, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239), *appealed by the gov't*.  In other words, "a prisoner must exhaust the administrative appeal process, or wait 30 days, before his claim may be considered" by the court.  *United States v. Underwood*, No. TDC-18-0201, 2020 WL 1820092, at *2 (D. Md. Apr. 10, 2020) (citing cases).  Mr. Jenkins has fulfilled this requirement.

## ARGUMENT

Judges in the District of Maryland and around the country have found that a defendant's vulnerability to COVID-19 constitutes "extraordinary and compelling reasons" for relief.  Mr. Jenkins' underlying medical conditions make him especially vulnerable to COVID-19, constituting "extraordinary and compelling reasons" for relief.  Mr. Jenkins' underlying release does not pose a danger to the community, and a balancing of the § 3553(a) factors with the risks to the client posed by COVID-19 warrants relief.

**A. The Court Has Authority to Determine Mr. Jenkins' Vulnerability to COVID-19 Constitutes an "Extraordinary and Compelling Reason" for a Sentence Reduction.**

Judges Bennett and Chuang have joined federal judges across the country in holding that they have the authority to define "extraordinary and compelling reasons" for release under USSG § 1B1.13 app. n. 1(D), and that the risks associated with COVID-19 can constitute an "extraordinary and compelling reason" for a sentence reduction. Judges Blake and Bredar have also recognized the threats posed by COVID-19 in granting individuals early release.

In *United States v. Mel*, Judge Chuang held that "[a]s applied to Mel, the COVID-19 pandemic presents 'extraordinary and compelling reasons' that warrant the modest sentencing reduction requested." 2020 WL 2041674, at *2. Ms. Mel had submitted documents establishing that she had a thyroid mass that doctor's estimated had a 25- to 40-percent chance of malignancy. While Judge Chuang found he could not "conclude with certainty" that Mel had a health condition that placed her at particular risk to severe illness from COVID-19, he "nevertheless . . . f[ound] that the historic COVID-19 pandemic, the fact that Mel has been incarcerated in one of the federal prisons most profoundly impacted by COVID-19 [FCI Danbury], and the fact that as a result of the outbreak, she has effectively been prevented from receiving necessary medical care for a potentially life threatening condition, collectively establish 'extraordinary and compelling reasons' within the meaning of 18 U.S.C. § 3852(c)(1)(A)." *Id.* at 3.

In *United States v. Gutman*, Judge Bennett found that Mr. Gutman's "underlying medical conditions, combined with his increasing risk of exposure to COVID-19, present extraordinary and compelling reasons for his release from confinement." No. RDB-19-069, ECF 82 at 4. Similarly, in *United States v. Winston*, Judge Bennett found that Mr. Winston's "grave medical condition" alone constituted "extraordinary and compelling reasons" for relief, but he went on to

find that "COVID-19 poses additional risks to Mr. Winston." No. RDB-13-639, ECF 294 at 5. Noting the number of cases of COVID-19 at FCC Butner, where Mr. Winston resides, Judge Bennett noted that "similar conditions at other prisons have led United States District Courts across the nation to grant compassionate release to certain defendants who have medical issues similar to Mr. Winston's conditions." *Id.* (citing cases). As of the date of this pleading, Mr. Jenkins would aver that news reports are that nine inmates have died at FCI Butner.

In granting motions filed under Section 404 of the First Step Act and reducing the defendants' sentences to time served, Judges Bennett, Blake, and Bredar have noted the threat COVID-19 poses to those incarcerated in BOP facilities. *See, e.g.*, *United States v. Dennis*, No. RDB-08-012, ECF 228 (D. Md. May 1, 2020) ("[T]his Court cannot ignore the grave health risks posed by the COVID-19 Pandemic to those serving prison sentences."); *United States v. Glover*, No. JKB-08-0382, ECF 279 (D. Md. Apr. 13, 2020) (same); *United States v. Collins*, No. CCB-10-0336, ECF 1038 (D. Md. Mar. 30, 2020) (same).

Judges in districts throughout the United States have recognized that, at least for certain defendants, COVID-19 presents "extraordinary and compelling reasons" warranting a reduction in sentence under the compassionate release statute. A non-exhaustive list includes:

- *United States v. Hansen*, No. 17-cr-50062, 2020 WL 2219068 (N.D. Ill. May 7, 2020) ("[T]he Court cannot discount the risk to Hansen if he contracts coronavirus, as reliable information places him in a higher-risk category. Specifically, the presentence report documents that he suffers from diabetes, hypertension, high cholesterol, kidney disease, and chronic obstructive pulmonary disease, all of which are confirmed risk factors for serious illness if one contracts coronavirus.")

- *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008 (E.D. Mich. May 7, 2020) (shortening 60-month sentence after only 21 months because Amarrah's "Type II diabetes, hypertensive heart disease, cardiac arrhythmia, obstructive sleep apnea, and asthma" put him a substantial risk should he contract COVID-19 even though facility had no reported cases);

- *United States v. Howard*, No. 4:15-cr-00018-BR, 2020 WL 2200855 (E.D.N.C. May 6, 2020) (finding 52-year-old with "chronic obstructive pulmonary disease ('COPD'), Type

II diabetes, obesity, Stage 3 kidney disease, edema, open wounds on his legs, and a diaphragmatic hernia" demonstrated extraordinary and compelling circumstances due to COVID-19 even though his conditions neither constituted terminal illness nor prevented him from engaging in most of his daily activities without assistance);

- *Casey v. United States*, No. 4:18-cr-4, 2020 WL 2297184, at *3 (E.D. Va. May 6, 2020)("The Court finds that Petitioner has set forth extraordinary and compelling reasons to modify his sentence because of the great risk that COVID-19 poses to a person of his age with underlying health conditions.");

- *United States v. Quintero*, No. 08-cr-6007L, 2020 WL 2175171 (W.D.N.Y. May 6, 2020) (granting compassionate release to man who "suffers from diabetes, a compromised immune system, obesity, and hypertension," "which make him more susceptible than another to contract the virus.");

- *United States v. Reid*, No. 17-cr-00175-CRB-2, 2020 WL 2128855 (N.D. Cal. May 5, 2020) (granting compassionate release based on risks COVID-19 presents to individual with hypertension, high cholesterol, and Valley Fever, which causes lung infection and can result in acute pneumonia);

- *United States v. Pabon*, No. 17-165-1, 2020 WL 2112265, at *1 (D Mass. May 4, 2020) (holding that for the 54-year-old defendant who suffers from "diabetes, hypertension, hemophilia, atopic dermatitis, gastroesophageal reflux disease, peptic ulcer, and diverticulitis" "nothing could be more extraordinary and compelling than this pandemic");

- *United States v. Echevarria,* No. 3:17-cr-44 (MPS), 2020 WL 2113604 (D Conn. May 4, 2020) (finding 49-year-old with pre-existing respiratory condition—a history of bronchial asthma—combined with the increased risk of COVID-19 in prisons had demonstrated extraordinary and compelling reasons for relief);

- *United States v. Early*, No. 09 CR 282, 2020 WL 2112371, at *2 (N.D. Ill. May 4, 2020) ("the Court cannot discount the risk to Mr. Early if he contracts coronavirus, as reliable information places him in a higher-risk category [62, diabetes and hypertension].  This, in the Court's view, qualifies as an extraordinary reason warranting consideration of a reduction of Mr. Early's sentence.");

- *United States v. Ardila,* No. 3:03-cr-264 (SRU), 2020 WL 2097736, at *2 (D Conn. May 1, 2020) (finding 71-year-old's medical conditions (diabetes, cardiovascular disease, hypertension, asthma, and obesity) and "current conditions of confinement constitute extraordinary and compelling reasons to reduce his sentence");

- *United States v. Soto*, No. 1:18-cr-10086-IT, 2020 WL 2104787 (D. Mass. May 1, 2020) (finding inmate with hypertension at facility with COVID-19 cases located in New York had shown extraordinary and compelling reasons for relief);

- *United States v. Kelly*, No. 3:13-CR-59-CWR-LRA-2, 2020 WL 2104241, at *7 (S.D. Miss. May 1, 2020) (granting compassionate release to young man without health issues at Oakdale I because "it has become increasingly apparent that the BOP has failed to control the outbreak at Oakdale I. … Given the steadily growing death toll and the apparent continued spread of the disease at Oakdale I, COVID-19 creates an 'extraordinary and compelling reason' potentially warranting a reduced sentence.").

- *United States v. Norris*, No. 7:19-cr-36-BO-2, 2020 WL 2110640 (E.D.N.C. Apr. 30, 2020) (finding defendant had demonstrated extraordinary and compelling circumstances for relief because he "suffers from various severe ailments," including a life-threatening disease, kidney failure requiring dialysis three times a week, and recurrent bouts of pneumonia, "that cumulatively make his continued confinement especially dangerous in light of COVID-19.")

- *United States v. Robinson*, No. 18-cr-00597-RS-1, __ F. Supp.3d __, 2020 WL 1982872 (N.D. Calif. Apr. 27, 2020) (granting compassionate release to prisoner at FCI Lompoc who suffers from severe psoriasis for which he takes immunosuppressant medication);

- *United States v. Coles*, No. 00-cr-20051, 2020 WL 1976296 (C.D. Ill. Apr. 24, 2020)(granting compassionate release to inmate who had served 19 years of 24-year sentence based on his vulnerability to COVID-19 because of hypertension, prostate issues, bladder issues, and a dental infection and because he is prediabetic);

- *United States v. Gorai*, No. 2:18-CR-220-JCM (CWH), 2020 WL 1975372 (D. Nev. Apr. 24, 2020) (granting compassionate release in light of COVID-19 to inmate who suffers from asthma;

- *United States v. Joling*, No. 11-cr-60131-AA, 2020 WL 1903280 (D. Ore. Apr. 17, 2020) (granting compassionate release to inmate at Butner in light of COVID-19 and his underlying conditions, including "hypertension, atherosclerosis, a history of transient ischemic attacks, dyslipidemia, obesity, history of left lower extremity fracture" and diagnosis of "prostatic adenocarcinoma");

- *United States v. Samy*, Case No. 16-20610-1, 2020 WL 1888842 (E.D. Mich. Apr. 16, 2020) (granting compassionate release because "Samy squarely fits the definition of an individual who has a higher risk of dying or falling severely ill from COVID-19" because of her age and underlying medical conditions, including a serious heart condition, diabetes and asthma);

- *United States v. Smith*, No. 12 Cr. 133 (JFK), 2020 WL 1849748 (S.D.N.Y. Apr. 13, 2020) (granting immediate release for individual with asthma, high cholesterol, blood clots, a thyroid condition, and suspected multiple myeloma in light of presence of COVID-19 at place of imprisonment);

- *United States v. Tran*, No. 08-0197-DOC, ECF No. 402 (C.D. Calif. Apr. 10, 2020) (finding defendant's asthma given the outbreak at FCI Oakdale "presents an extraordinary and compelling reason for compassionate release");

- *United States v. Burrill*, No. 17-cr-0491-RS-1, ECF No. 308 (N.D. Calif. Apr. 10, 2020) (granting compassionate release because defendant, 75, "suffers from asthma, high blood pressure, high cholesterol, diabetes, diverticulosis, blood clots, hearing loss, glaucoma, cataracts, and lower back nerve pain," placing him at a "heightened risk of becoming severely ill from COVID-19");

- *United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 10, 2020) ("Mr. Rodriguez's circumstances—particularly the outbreak of COVID-19 and his underlying medical conditions that place him at a high risk should he contract the disease—present 'extraordinary and compelling reasons' to reduce his sentence.");

- *United States v. Miller*, No. 16-cr-20222-1, 2020 WL 1814084, at *4 (E.D. Mich. Apr. 9, 2020) ("Miller squarely fits the definition of an individual who has a higher risk of falling severely ill from COVID-19. . . . Therefore, the Court finds that extraordinary and compelling reasons exist for his immediate compassionate release.");

- *United States v. Zukerman*, No. 16 Cr. 194 (AT), 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) ("The Court also finds that Zukerman has set forth 'extraordinary and compelling reasons' to modify his sentence, 18 U.S.C. § 3582(c)(1)(A)(i), because of the great risk that COVID-19 poses to an elderly person with underlying health problems.");

- *United States v. Colvin*, No. 3:19-cr-179 (JBA), 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020) (citing COVID-19 and defendant's medical conditions and "conclud[ing] that Defendant has demonstrated extraordinary and compelling reasons justifying her immediate release");

- *United States v. Edwards*, No. 6:17-cr-00003, 2020 WL 1650406, at *5 (W.D. Va. Apr. 2, 2020) (concluding defendant "has demonstrated an extraordinary and compelling reason for his compassionate release" in light of COVID-19 and preexisting health conditions);

- *United States v. Perez*, No. 17-cr-0513-AT, ECF No. 98 (S.D.N.Y. Apr. 1, 2020) (finding defendant's pre-existing medical condition combined with the risk of contracting COVID-19 at MDC Brooklyn constitutes "extraordinary and compelling reasons" to reduce his sentence to time served);

- *United States v. Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *3 (E.D. Wash. Mar. 31, 2020) (granting compassionate release because COVID-19 and defendant's medical conditions constitute "extraordinary and compelling reasons");

- *United States v. Muniz*, No. 4:09-CR-0199-1, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020) ("Because Defendant is at high-risk for severe illness from COVID-19 and because inmates in detention facilities are particularly vulnerable to infection, the Court finds that Defendant has demonstrated an extraordinary and compelling reason for compassionate release.");

- *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (finding "extraordinary and compelling reasons" based on combination of "COVID-19 pandemic" and defendant's "medical conditions");

- *United States v. Hansen*, No. 07-CR-00520(KAM), 2020 WL 1703672, at *8-9 (E.D.N.Y. Apr. 8, 2020) (granting compassionate release in light of "the unique risks posed by the COVID-19 pandemic to prisoners like Mr. Hansen, who is elderly and infirm").

There is no question that Section 603(b) of the First Step Act fundamentally changed the role of courts in the compassionate release process, vesting them with the authority to determine what constitutes extraordinary and compelling reasons for release. This pandemic, as applied to Mr. Jenkins, is an extraordinary and compelling circumstance.

### B. Mr. Jenkins' Situation Presents an "Extraordinary and Compelling" Reason Warranting a Reduced Sentence.

The Centers for Disease Control have identified several factors that put individuals at higher risk for severe illness. "Based on currently available information and clinical expertise, **older adults and people of any age who have serious underlying medical conditions** might be at higher risk for severe illness from COVID-19." CDC, *People Who Are at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. Those risk factors include:

- "People 65 years and older."

- "People who live in a nursing home or long-term care facility."

- "People with chronic lung disease or moderate to severe asthma."

- "People who have serious heart conditions."

- "People with diabetes."

*Id.*

A recent study published in the Journal of the American Medical Association (JAMA) found that among 5700 patients in New York City who were hospitalized with COVID-19, the

most common underlying medical conditions were hypertension (56.6 percent), obesity (41.7 percent) and diabetes (33.8 percent). Safiya Richardson et al., *Presenting Characteristics, Comorbidities, and Outcomes Among 5700 Patients Hospitalized with COVID-19 in the New York City Area,* JAMA, available at https://jamanetwork.com/journals/jama/fullarticle/2765184. Similarly, as Judge Chuang noted in a recent opinion ordering the release of a defendant from the Central Treatment Facility in Washington, D.C., "as of March 2020, three-fourths of individuals who died from COVID-19 in Italy had hypertension." *United States v. Keaton*, No. TDC-18-0215, ECF 84 at *5 (D. Md. Apr. 23, 2020) (citing *Coreas v. Bounds*, No. TDC-20-0780, 2020 WL 1663133, at * 1(D. Md. Apr. 3, 2020).

Mr. Jenkins' has several of the risk factors identified by the Centers for Disease Control and studies on those infected, to include Graves disease and diabetes. Mr. Jenkins' particular vulnerability to COVID-19 constitutes an extraordinary and compelling reason for relief given the spread of the virus within the Bureau of Prisons.

According to the Bureau of Prisons website, 22 inmates and 0 staff members have tested positive for COVID-19 at FCI Ft. Dix, while Mr. Jenkins would aver that he has been informed that the numbers are well in excess of those. ECF 1495 at 5. *COVID-19 Cases*, https://www.bop.gov/coronavirus/. While the Bureau of Prisons has made efforts to reduce the spread of the virus throughout the federal prison system, the rate of infection is far higher within the Bureau of Prisons than within the community at large, and continues to spread at an alarming rate, as the below graph demonstrate.



Amid this rapidly-unfolding crisis, the universally-recommended antidote is simple: reduce the prison population by releasing those whose continued incarceration is not necessary to protect the public so that correctional institutions can better protect those who need to stay incarcerated.[1] Mr. Jenkins is exactly the type of individual deserving of compassionate release: He / is at risk of severe illness and, as will be discussed in the next section, his/her release does not pose a danger to the community and balancing the 3553(a) factors warrants the requested relief.

---

[1]   For example, on March 27, 2020, more than 400 former DOJ leaders, attorneys, and federal judges sent an open letter to the President, asking that he take immediate action to reduce the population in correctional facilities to prevent the catastrophic spread of COVID-19, in particular by commuting the sentences of elderly and medically vulnerable inmates who have already served a majority of their sentence. *See https://fairandjustprosecution.org/wp-content/uploads/2020/03/Letter-to-Trump-from-DOJ-and-Judges-FINAL.pdf.* The same day, dozens of public health experts made a similar request, asking the President to commute the sentences of elderly inmates, noting they are at the highest risk of dying from the disease and pose the smallest risks to public safety. *See https://thejusticecollaborative.com/wp-content/uploads/2020/03/Public-Health-Expert-Letter-to-Trump.pdf.*

**C. The Relevant § 3553(a) Sentencing Factors Warrant Either Reducing Mr. Jenkins' Sentence to Time Served or Modifying His Sentence to Allow Him to Serve the Remainder of His Term on Home Confinement.**

Under the compassionate release statute, when a defendant establishes the existence of extraordinary and compelling circumstances justifying relief, courts must consider the relevant sentencing factors of 18 U.S.C. § 3553(a) to determine whether a sentencing reduction or modification is warranted. 18 U.S.C. § 3582(c)(1)(A)(i).  Here, Mr. Jenkins' advanced age, compromised physical health, and the unique danger he faces of contracting COVID-19 and becoming severely ill, when combined with the other § 3553(a) sentencing factors, clearly warrant relief.

*First*, Thus, while Mr. Jenkins' offense conduct was certainly serious, it involved neither weapons nor allegations of violence on his part.  Furthermore, as Judge Chuang has noted, being incarcerated during this outbreak "sufficiently increased the severity of the sentence beyond what was originally anticipated."  *Mel*, 2020 WL 2041674, at *3.

*Second*, continued incarceration is not necessary to protect the community from the crimes of the defendant.

*Third*, ongoing medication issues render Mr. Jenkins entirely at the mercy of the medical staff at the institution.  This is a staff which, if even a portion of media reports and evidence adduced from court-ordered investigations regarding the BOP's being overwhelmed by COVID-19, simply cannot be guaranteed not to render Mr. Jenkins' all the more at risk due to his parlous health.  This is the only reasonable conclusion to be drawn in light of other district courts' having taken remedial measures writ large to ameliorate the shortfall in response at federal correctional and detention facilities of every stripe, from FCI Elkton, Ohio, to the DC Jail, along with an assortment of state facilities

14

In this case, like those cited above, *supra* at 7-13, a reduction or modification of **Mr. Jenkins'** sentence would not diminish the seriousness of the offense, nor would it place the public in any danger. The extraordinary and compelling circumstances presented by the uncontrolled spread of COVID-19—compounded by the heightened risks faced by Mr. Jenkins, whose ability to engage in basic self-protective measures is restricted, if not non-existent — warrant relief.   Because **Mr. Jenkins'** has been incarcerated for 43 months (36% of his 120-month total sentence, which is 45% of his 96-month sentence to be served, less good time), which is "sufficient, but not greater than necessary" to satisfy the goals of sentencing under § 3553(a), Mr. Jenkins' seeks an order reducing his sentence to time served. Alternatively, he seeks an order reducing his sentence to time served and modifying his judgment to add from 53 to 77 months (the unserved portion of his original sentence) to his term of supervised release so that it can be served on home confinement.

## CONCLUSION

Mr. Jenkins has demonstrated extraordinary and compelling reasons for compassionate release and asks this Court to reduce his sentence to time served, or modify his sentence to allow him to serve the remainder of his sentence on home confinement.

Respectfully submitted,


   /s/
MICHAEL D. MONTEMARANO

Law Office of Michael D. Montemarano, P.A.
3826 Paul Mill Road
Suiter 204
Ellicott City, MD 21042
Phone: (410) 992-0067
Fax: (443) 663-3002
Email: montemarano67@gmail.com

15

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on or before this 27th day of May, 2020, a copy of the

foregoing

    (1)  *Memorandum in Support of Emergency Motion, etc.*

was filed with the Clerk and served via CM/ECF on Christina Hoffman, Esq., Assistant United

States Attorney, 36 South Charles Street, 4th Floor, Baltimore, MD 21201.


                    ___/s/_____

                    MICHAEL D. MONTEMARANO