# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : |
| | Crim. No.: CCB-16-cr-267-25 |
| SYDNI FRAZIER | : |

## DEFENDANT'S MOTION TO REOPEN SUPPRESSION HEARING AND MOTION FOR A NEW TRIAL

Sydni Frazier, through counsel, moves this Court to reopen the suppression hearing in this case. He further moves this Court to grant him a new trial. In support, he states the following.

### I. PROCEDURAL BACKGROUND

On January 23, 2017, the Defendant was initially charged via a complaint with one count of being a Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g) in Criminal Case Number 17-0061. He was indicted on that charge on February 2, 2017. The Indictment was dismissed on June 8, 2017, but on June 1, 2017, Frazier was added as a co-defendant in a Second Superseding Indictment in Criminal Case Number 16-267. Count One charged Racketeering Conspiracy, in violation of 18 U.S.C. § 1962(d); Count Two charged Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C § 841(a)(1), (b)(1)(A), (b)(1)(C); Count Twenty-Two charged Frazier with being a Felon in Possession of Firearms and Ammunition, in violation of 18 U.S.C. § 922(g);

County Twenty-Nine charged Possession with Intent to Distribute Heroin and Fentanyl, in violation of 21 U.S.C. § 841.

Frazier filed a Motion to Suppress Evidence Derived from Search of Cell Phones on August 24, 2017, Doc # 591, as well as a Motion to Suppress Evidence Derived from Search of Social Media, Doc # 594. The government filed its Opposition on May 15, 2018. Doc # 779. There was no evidentiary hearing on the motions. The Court denied the motions on August 31, 2018. Doc # 875 at pp. 3-4.

A jury trial began on March 18, 2019. On April 15, 2019, a mistrial was declared as to Mr. Frazier before his case reached the jury. On July 30, 2019, Mr. Frazier was charged in a three-count Third Superseding Indictment. Count One charged Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C § 841(a)(1), (b)(1)(A), (b)(1)(C); Count Two charged Possession of a Firearm in Furtherance of a Drug Trafficking Crime Resulting in Death, in violation of 18 U.S.C. § 924(c), § 924(j), § 1111, and § 2; Count Three charged Frazier with being a Felon in Possession of Firearms and Ammunition, in violation of 18 U.S.C. § 922(g).

On March 6, 2020, following a jury trial, Mr. Frazier was found guilty on all counts.

## II. IVO LOUVADO'S CRIMINAL BEHAVIOR

On March 11, five days after Frazier's conviction, an information was filed in Case Number CCB-20-098. Doc # 1.[1] On March 12th, six days after Frazier's

---

1. The *Louvado* Information alleges that:

conviction, counsel for Mr. Frazier came across a *Baltimore Sun* article detailing the filing of an information charging Ivo Louvado, a Baltimore Police Officer, for his role in the sale of three kilograms of cocaine in 2009.

- Prior to February 19, 2009, Louvado learned from other officers "about a large-scale narcotics trafficker operating out of a residence on the 1400 block of Ellamont Street, in Baltimore, Maryland" (¶ 5);

- On February 19, 2009, Louvado and other officers conducted surveillance of T.M. on that block. Other officers claimed to have recovered cocaine residue from trash thrown from a car that had been driven from the residence. Louvado and others stayed in the house until a search warrant was obtained. Louvado participated in the search and took photographs, including photographs of a jacket that contained a large amount of cash (¶¶ 6-7);

- Other officers found car keys and used them to activate an alarm in a nearby pickup truck. Louvado and other officers went to the pickup truck, found a large quantity of cocaine, and waited for a SWAT team to provide protection as the cocaine was transported to BPD headquarters. Louvado followed the SWAT team as they drove the cocaine to headquarters in a surveillance van (¶¶ 8-9);

- Forty-one kilograms of cocaine were turned into the BPD's Evidence Control Unit on February 20, 2009, and used to bring charges against T.M. [Trenell Murphy] In addition, Louvado and two other officers "discovered 3 additional kilograms of cocaine in the surveillance van that had been used to transport the 41 kilograms that were turned into BPD." The cocaine came from the same truck. (¶¶ 11-13);

- Louvado and two other officers "agreed to sell the cocaine and split the proceeds from its sale." One of the other officers used a source to sell the cocaine. "Ultimately, LOUVADO received $10,000 in drug proceeds from the sale of the cocaine seized from T.M.'s pickup truck that had not been turned in to BPD" (¶¶ 14-15);

- The FBI interviewed Louvado about the cocaine on May 30, 2018 (¶ 18); and

- During the interview, Louvado "conceal[ed] and cover[ed] up material facts, namely, that he and two other officers had split the proceeds from selling three of the kilograms of cocaine that BPD had seized on February 19 and 20, 2009" (¶ 19).

As a result of the news article, counsel for Frazier requested all details of Louvado's involvement in Frazier's investigation. Doc # 1458. The government responded and stated, in relevant part, that Louvado was the affiant for the warrant for three cell phones seized at the time of Frazier's arrest on January 25, 2017, the warrant for Frazier's Instagram account, and the warrant for Shakeen Davis' cell phones seized at the time of Davis' arrest on February 24, 2017. *Evidence obtained as a result of these three warrants was introduced at trial against Frazier*. Doc # 1470 at p. 1. The government further provided, "With respect to each of these warrants, Louvado's affidavit merely relayed information reported by other investigators in the case. *Louvado did not himself make any of the observations that served as the basis for probable cause*." *Id*. at p. 2 (emphasis added). The government next asserted, "*There has not been any allegation that the information in the affidavits was false or misleading in any respect. The government is not aware of any information undermining the probable cause determination with respect to any of the warrants*." *Id*. at p. 2 (emphasis added). Finally, the government wrote, "The evidence introduced at trial that flowed from the warrants related almost exclusively to Frazier's involvement in the drug trafficking conspiracy charged in Count One ... Moreover, the evidence was cumulative of other evidence of Frazier's involvement in heroin trafficking..." *Id*. Counsel for Frazier responded in a letter dated April 8, 2020. Doc. # 1472. In that letter counsel voiced concern that the evidence derived from the searches contributed to the jury's finding of guilt on the murder charge because the murder charge was predicated on a finding of guilt on

4

the drug trafficking conspiracy. "This evidence expanded the duration of the charged conspiracy and provided visual proof of possession of large sums of money (proceeds of narcotics trafficking). We therefore disagree with the characterization of this evidence as merely cumulative and limited in scope to Count One." *Id*. at pp. 1-2.

## III. THE "LOUVADO" AFFIDAVITS

Louvado, in each affidavit he swore to, gave an extensive recitation of his training and experience, including specialized training and expertise in narcotics trafficking, GPS training, and training related to cellular technologies, including cell tower data. Doc # 1470, Exhibits 2-4, at pages 5 - 8. Louvado also swore to the following in his affidavit for a search warrant for Frazier's three cell phones:

"10. *The information contained in this Affidavit is based upon my personal participation in this investigation*, my training and experience, my review of documents and other evidence, and information obtained from other law enforcement officers, witnesses, cooperating sources, and other individuals. All conversations and statements described in this Affidavit are related in substance and in part unless otherwise indicated.
"11. I submit this Affidavit for the limited purpose of establishing probable cause for the requested warrant, and this Affidavit does not set forth all my knowledge about this matter. *I have not, however, excluded any information known to me that would defeat a determination of probable cause.*"

Doc. #1470, Exhibit 2, at p. 8 (emphasis added).

Louvado also swore to the following in his affidavit for the Instagram account warrant:

"10. *The information contained in this Affidavit is based upon my personal participation in this investigation*, my training and experience, my review of documents and other evidence, and information obtained from other law enforcement officers, witnesses, cooperating sources, and other individuals. All

5

conversations and statements described in this Affidavit are related in substance and in part unless otherwise indicated.

"11. I submit this Affidavit for the limited purpose of establishing probable cause for the requested warrant, and this Affidavit does not set forth all my knowledge about this matter. *I have not, however, excluded any information known to me that would defeat a determination of probable cause.*"

Doc. #1470, Exhibit 3, at p. 8 (emphasis added).

Following this trend, Louvado swore to the following in his affidavit for a warrant to search Shakeen Davis' cell phones:

"10. *The information contained in this Affidavit is based upon my personal participation in this investigation*, my training and experience, my review of documents and other evidence, and information obtained from other law enforcement officers, witnesses, cooperating sources, and other individuals. All conversations and statements described in this Affidavit are related in substance and in part unless otherwise indicated.

"11. I submit this Affidavit for the limited purpose of establishing probable cause for the request warrant, and this Affidavit does not set forth all my knowledge about this matter. *I have not, however, excluded any information known to me that would defeat a determination of probable cause.*"

Doc. #1470, Exhibit 4, at p. 8 (emphasis added).

Mr. Frazier submits that Louvado's blatant falsehoods in the documents he swore to, under oath, warrant re-opening the suppression hearing.

## ARGUMENT

### I. MOTION TO REOPEN SUPPRESSION HEARING

The decision to reopen a suppression hearing is a matter of discretion for the trial court. *United States v. Dickerson*, 166 F.3d 667, 678 (4th Cir. 1999), *rev'd on other grounds*, 530 U.S. 428 (2000). In exercising that discretion, the Fourth Circuit noted, "[W]hen the evidence forming the basis for the party's motion for reconsideration was in the movant's possession at the time of the initial hearing, ...

the movant must provide a legitimate reason for failing to introduce that evidence prior to the district court's ruling on the motion to suppress ..." *Id*. at 679. "Then the timeliness of the motion, the character of the testimony, the effect of granting the motion, and whether the opposing party will be prejudiced by reopening the hearing should be considered." *United States v. Harris,* No. CRIM. PWG-13-202, 2014 WL 5797762, at *3 (D. Md. Nov. 6, 2014), *citing, United States v. White,* 455 F. App'x 647, 541 (6th Cir.2012). Finally, the movant must show that the evidence sought to be introduced is material – that there is a reasonable probability that it would have changed the disposition of the motion to suppress. *United States v. McCoy*, 348 F. App'x 900, 902 (4th Cir. 2009). Thus, Frazier has to establish (1) he did not have evidence at the time of the motion hearing; (2) that the motion to reopen is timely; (3) the nature of the testimony; (4) the effect of granting the motion; (5) whether the government would be prejudiced by reopening the hearing; and (6) that the evidence is material. Frazier discusses each factor in turn.

### A. *Frazier Did Not Have the Information Until After Trial*

Here, the government withheld the fact that Louvado had been under investigation long before the motion hearing and trial. In fact, the FBI interviewed Louvado on May 30, 2018. Finally, five days after the guilty verdict in Frazier's case, the government filed the information against Louvado. And even after charging Louvado, the government still failed to alert counsel to the fact that Louvado was a target of an ongoing investigation and was charged. Indeed, the only way counsel became aware of the charges was by reading an article in the March

7

12th edition of the *Baltimore Sun*. The defendant's inability to address this issue at the hearing falls squarely on the government's shoulders.

### B.     The Motion To Reopen Is Timely

As noted above, counsel for Frazier wrote to the government on March 18, 2020, requesting that the government disclose all information regarding Louvado and his involvement in the Frazier investigation. Doc # 1458. The government replied on April 3, 2020, Doc # 1470, and counsel followed up with another letter to the government on April 8, 2020, Doc. # 1472.  After receiving no further information from the government, Frazier files this instant motion. He submits that the filing is timely.

### C.     The Character of the Testimony

At present, there is no sworn testimony detailing Louvado's role in the Frazier investigation. However, it is anticipated that there will be testimony and/or other evidence concerning the investigation of Louvado that would include when law enforcement suspected Louvado's role in the theft of cocaine, when the investigation began, when the U.S. Attorney's office became aware of the investigation, and details concerning his participation in the Frazier investigation.

### D.     The Effect of Granting the Motion

Should this Court grant this motion to reopen the suppression hearing, the defendant expects to be able to put before the Court evidence of the role that Louvado made material misrepresentations and omissions in the sworn affidavits. The government, of course, would have the opportunity to explain why it failed to

disclose the information to Frazier in a timely fashion. In the end, transparency has to be the best policy to adopt when unraveling the activities of a corrupt, rogue government agent.

### E. *Government Would Not Be Prejudiced By Reopening the Hearing*

Frazier submits that the government would be hard-pressed to claim prejudice when it was the government that failed to disclose the information in a timely fashion.

### F. *The Evidence Is Material*

When a defendant makes a substantial preliminary showing that a false statement was knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in a search warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at defendant's request. *Franks v. Delaware*, 438 U.S. 154 (1978).

#### i. Intentional Misrepresentation

As noted above, Louvado swore, under oath in each of the three affidavits, "The information contained in this Affidavit is based upon my personal participation in this investigation…" The government disputes this in its letter dated April 3, 2020: "With respect to each of these warrants, Louvado's affidavit merely relayed information reported by other investigators in the case. Louvado did not himself make any of the observations that served as the basis for probable cause." Doc #1470. at p. 2. In this instance, either the government was mistaken in

its letter to defense counsel and Louvado was involved in the investigation or, Louvado misrepresented his role in each of the affidavits.

### ii. Intentional Omission

The Fourth Circuit first applied *Franks* to intentional, material omissions in *Colkley v. United States,* 899 F.2d 297(4th Cir. 1990). When considering omissions in an affidavit, in order to obtain a *Franks* hearing, the defendant must show that the omissions were "*designed to mislead,* or ... made in *reckless disregard of whether they would mislead*" and that the omissions were material, meaning that their "inclusion in the affidavit would defeat probable cause." *Id.* at 301 (emphasis added). *See also United States v. Lull*, 824 F.3d 109, 155-20 (4th Cir. 2016) (omission of fact that confidential informant attempted to steal money from officers after his controlled buy of drugs, for which how was indicted and terminated as a cooperating informant, was at least reckless and was material to probable cause, reversing conviction). Evidence is deemed material if it defeats probable cause. *See United States v. Jones*, 942 F.3d 634 (4th Cir. 2019) ("We assess materiality using a simple test. We insert the omitted facts into the warrant affidavit and, examining the information contained within the 'revised' affidavit, evaluate whether there nevertheless would have been probable cause to issue the warrant. If the revised affidavit still establishes probable cause, the defendant is not entitled to a *Franks* hearing.") The omitted facts are not material "if the issuing judge would have granted the search warrant even if the affidavit included the allegedly omitted information..." *United States v. Tate*, 524 F.3d 449, 457 (4th Cir. 2008). The characteristics of the affiant of the affidavit are not mere window dressing. *See United States v. Savoy*, 889 F. Supp. 2d

78, 87 (D.D.C. 2012) ("In examining whether probable cause existed to grant a search warrant, reviewing courts look at the 'totality of the circumstances' rather than considering facts in isolation. Relevant factors may include the affiant's experience and training..."); *United States v. Tucker*, 481 F. Supp. 182, 186–87 (E.D.N.Y. 1979) ("The bulk of the affidavit for search warrants details the affiant's participation in a long-term investigation into criminal violations of the Copyright Law, the affiant's expertise, ... [the] Agent spent twenty months exclusively assigned to a joint F.B.I.-Justice Department-Organized Crime Strike Force investigation; that he had received extensive training from the F.B.I. and a recording industry association; that he worked in an undercover capacity ...") This Court must consider, therefore, whether the issuing judges would have issued the search warrants if Louvado included in the "Affiant Background" that he was involved in and was being investigated for egregious corrupt conduct. His failure to so advise can easily be viewed as a fraud upon the court. Finally, "In evaluating whether probable cause would have existed if the omitted statements had been included, we only consider the information actually presented to the magistrate during the warrant application process." *United States v. Lull*, *supra* at 119 n. 3 (internal quotation mark and citation omitted). As such, the Court cannot look to any other evidence and must restrict this review to the four corners of the warrant. The Court cannot, as the government suggested, consider the trial testimony offered by Detective Niedermeier, Agent Moore, and Sergeant Nayim Sadik. *See* Doc 1470 at p. 2. Therefore, in order to show the omission was material, Frazier must show

11

(1) that the omission is the product of a deliberate falsehood or reckless disregard for the truth and (2) inclusion of the omitted information in the affidavit would defeat probable cause.

Officer Louvado's criminal conduct occurred in February 2009 and the FBI interviewed him in May 2018, which was prior to the motions hearing and trial. During that interview Louvado provided false information in an effort to conceal his criminal involvement. His conduct led to him being criminally charged. Yet, Louvado portrayed himself as a law-abiding detective having extensive training and experience. He further swore that information in the affidavit was based, in part, on his personal investigation, yet the government disputes this. He also swore that he has "not, however, excluded any information known to me that would defeat a determination of probable cause." Clearly, his criminal background would have defeated a determination of probable cause. Frazier submits Louvado's omission of these facts was meant to mislead Judges Coulson and Copperthite .

Further, Frazier argues that had those omissions were material. Surely, had these omissions been included in Louvado's affidavit, the warrants would not have been approved. In fact, if this information were included, it is unlikely the affidavit would have even been presented to the court. Had Frazier been advised by the government of Louvado's criminal indiscretions, he would have been allowed to present this information in a *Franks* hearing. But because this information was intentionally withheld from Frazier, it is proper for this Court to reopen the suppression hearing.

### G. The Government's Suppression of Evidence Regarding Louvado Violates *Brady v. Maryland*[2]

Frazier submits that the government was duty-bound to advise him of the investigation of Louvado before his motions to suppress were litigated. Frazier is aware that *United States v. Colkley*, 899 F.2d 297(4th Cir. 1990) implies that *Brady* does not apply in the arena of suppression motions.[3] In *Colkley* the defendant argued that an affiant must include all potentially exculpatory evidence in the affidavit: "In addition to being unsupported by the logic of *Franks,* Johnson's contention that the Fourth Amendment *requires an affiant to include all potentially exculpatory evidence in the affidavit* must be rejected on more general grounds. In effect, Johnson asks us to import the rule of *Brady v. Maryland, ...* into the warrant application process." *Id* at 302 (emphasis added). Here, that is not what the defendant is arguing. Rather, it is his position that *the government* has a duty to advise the defendant of facts that are *material* at the time of the motions hearing.

---

[2] 373 U.S. 83 (1963).

[3] It is an unsettled question whether *Brady* applies to pretrial suppression hearings. The Fifth and Ninth Circuits have held that it does. See *Smith v. Black*, 904 F.2d 950, 965–66 (5th Cir. 1990), *vacated on other grounds*, 503 U.S. 930, 112 S.Ct. 1463, 117 L.Ed.2d 609 (1992); *United States v. Barton*, 995 F.2d 931, 935 (9th Cir. 1993). The Fourth Circuit held that, where "a law enforcement officer intentionally [lies] in a[n] affidavit that formed the sole basis for searching the defendant's home, where evidence forming the basis of the charge to which he pled guilty was found," *Brady* renders a guilty plea not knowing and voluntary. *United States v. Fisher*, 711 F.3d 460, 469 (4th Cir. 2013). The D.C. Circuit has expressed doubt that *Brady* applies in pretrial suppression hearings, but it has not expressly decided the issue. See *United States v. Bowie*, 198 F.3d 905, 912 (D.C. Cir. 1999) ("Suppression hearings do not determine a defendant's guilt or punishment, yet *Brady* rests on the idea that due process is violated when the withheld evidence is 'material either to guilt or to punishment[.]'"

### H. *In Camera Review Of Materials*

Mr. Frazier submits that it would be proper for this Court to conduct an *in camera* review of information. The prosecutors in this case have failed to provide the defendant with detailed information concerning Louvado's role in the case and details concerning the investigation of Louvado. Frazier requests that the review include the following:

- When did the government[4] first learn that Det. Louvado might have been involved in or aware of the theft of the cocaine in February 2009?

- At what point did the government conclude that Det. Louvado provided false information to the FBI during the May 30, 2018, interview by the FBI?

- Identify all times when Det. Louvado was present or participated in surveillance, execution of search warrants, interrogations/questioning, inventory of evidence, chain of custody, preparing witnesses, or any other activity in connection with this case;

- Identify all times Louvado testified before a grand jury in connection with this case and the substance of his testimony;

- Identify all prosecutors who reviewed Det. Louvado's affidavits prior to submission to the Court.

### II. **MOTION FOR NEW TRIAL**

The Due Process Clause requires a prosecutor to disclose to criminal

---

[4] "Government" includes the prosecutors in this case, their supervisors, the Criminal Chief, First Assistant U.S. Attorney, FBI, ATF, and Baltimore Police Department.

defendants favorable evidence in the government's possession that is material either to guilt or punishment irrespective of the good or bad faith of the prosecutor. *United States v. Agurs*, 427 U.S. 97, 109 (1976). Suppression of exculpatory evidence by the Government that is material to the outcome of a trial violates due process, irrespective of the motivation of the prosecutor. *Brady v. Maryland, supra.* Evidence is material when "its suppression undermines confidence in the outcome of the trial." That is when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 678, 682 (1985), *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995).

To prove a *Brady* violation, a defendant must show that the undisclosed evidence was (1) favorable to the defendant; (2) material; (3) that the prosecution had the materials and failed to disclose them. *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972), *accord, United States v. Horton*, 693 F.3d 463, 470 (4th Cir. 2012); *United States v. King*, 628 F.3d 693, 701-02 (4th Cir. 2011).

### A. *The Evidence Is Favorable To The Defendant*

For all the reasons set forth previously, the concealed evidence was favorable to Frazier. Here, the facts set forth in the Louvado Information clearly demonstrate that Louvado misled Judge Copperthite and Judge Coulson into thinking he was a trustworthy narcotics investigator when in fact he was a rogue, corrupt agent whom the government entrusted with upholding the law but instead, took advantage of his position and participated in egregious criminal behavior.

### B. The Evidence Was Material to the Defense

The information about Louvado was material. As such, there is a "reasonable possibility that its disclosure would have produced a different result." *United States v. Bartko,* 728 F.3d 327, 338 (4th Cir. 2013). "This standard does not require a showing that a jury more likely than not would have returned a different verdict." *United States v. Parker,* 790 F.3d 550, 550 (4th Cir. 2015). Had the information been disclosed prior to trial, Frazier could have argued to reopen the motion to suppress because the withheld evidence entitled him to a *Franks* hearing. The result, as addressed in Issue I, above, would have led to the suppression of all evidence seized as a result of two of the three warrants. This would have dramatically altered the government's case and the evidence it could have introduced at trial.

### C. The Prosecution Had the Information and Failed to Disclose It

It is not in dispute that this material was **never** disclosed to Frazier; counsel became aware of it by way of the *Baltimore Sun* six days after the guilty verdict was rendered. Indeed, the government gives no justification for it not being provided. It is no defense to non-disclosure that the evidence was in the hands of investigators and its existence was personally unknown to the prosecutors. The knowledge of investigators is imputed to the prosecutors regardless of actual awareness. *United States v. Robinson*, 627 F.3d at 951-52 (4th Cir. 2010), *accord*, *Kyles v. Whitley*, 514 U.S. at 437 (1995). See also *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992) ( "[g]iven the close working

relationship between the Washington metropolitan police and the U.S. Attorney for the District of Columbia (who prosecutes both federal and District crimes, in both the federal and Superior courts), a relationship obviously at work in this prosecution, the duty must reach the police department's homicide and Internal Affairs Division files."). Even if the prosecutors in this case were somehow kept in the dark regarding the investigation into Louvado, their superiors certainly were not. As such, this information was known by the government before the motion hearing and the trial yet it chose not to disclose it as required.

## CONCLUSION

For the reasons stated herein, Sydni Frazier moves this Honorable Court to grant the requested relief in this case.

Respectfully submitted,

/s/_____
Christopher M. Davis #23441
Davis & Davis

Davis & Davis
1350 Connecticut Avenue, NW
Suite 202
Washington, DC 20036
202.234.7300
cmdavisdc@gmail.com

/s/_____
Adam Daniel Harris
Law Office of Adam D. Harris, L.L.C.
600 Jefferson Plz.
Ste. 201
Rockville, MD 20852
301.960.5005
adam@adamharrislawfirm.com

*Counsel for Sydni Frazier*

<u>CERTIFICATE OF SERVICE</u>

    I hereby certify that a copy of this motion was served upon all counsel of record via the Court's CM/ECF System on this 2nd day of June 2020.

/s/_____
Christopher M. Davis