# UNITED STATES DISTRICT
# DISTRICT OF MARYLAND

FILED ___ ENTERED
LOGGED ___ RECEIVED

NOV 03 2020

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

JACOB BOWLING,
Petitioner

       v

No. CCB-16-267

UNITED STATES
Respondent

## MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S SECTION 2255 MOTION

Petitioner, Jacob Bowling, appearing in pro se and in forma pauperis, submits the following memorandum of law in support of his Setion 2255 Motion submitted to the Court via mail on 10/21/2019.

## ARGUMENT

### I. Ineffective Assistance of Counsel At Sentencing (2D1.1(b)(1))

Sentencing counsel was ineffective at petitioner's sentencing stage for failing to raise an objection to the gun enhancement under U.S.S.G. Section 2D.1.1(b)(1). Seeing as there was no evidence at all submitted to the Court which connected any weapon possessed by petitioner to the drug trafficking charged in the indictment for which he was convicted. The law requires this.

An enhancement under U.S.S.G. Section 2D1.1(b)(1) is warranted "when the weapon at issue" was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction..." United States v. Manigan, 592 F.3d 621, 628-29 (4th Cir. 2010). The government must prove by a preponderance of the evidence that "the weapon was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction." United States v. McAllister, 272 F.3d 228, 233-34 (4th Cir. 2001).

In assessing whether a defendant possessed a firearm in connection with relevant drug activity, a sentencing court is entitled to consider several pertinent factors. One important factor is the type of firearm involved. See United States v. Drozdowski, 313 F. 3d 819, 822 (3d Cir. 2002)(identifying type of firearm as relevant to application of weapon enhancement). As Judge Wilkinson noted in United States v. Harris, 128 F. 3d 850, 853 (4th Cir. 1997), and as the Guidelines emphasize, see U.S.S.G. section 2D1.1(b)(1) cmt. n. 3., an unloaded hunting rifle is a firearm that would not be readily connected to drug activities. In the instant case, the government seemed to rely solely on one piece of evidence — or nonevidence to be more accurate — which was a gun magazine found pursuant to a warrant. Such "evidence" falls short of the requirements indicated above to establish evidence necessary for a weapon enhancement.

The location or proximity of a seized firearm is also relevant to a sentencing

court's analysis of whether it was possessed in connection with drug activities that were part of the same course of conduct or common scheme as the offense of conviction. "The proximity of guns to illicit narcotics can support a district court's enhancement of a defendant's sentence under section 2D1.1(b)(1)." Harris, 128 F.3d at 852. Similarly, firearms that are readily accessible during drug activities can be deemed as possession in connection therewith. See United States v. Corral, 324 F.3d 866, 873 (7th Cir. 2003) ("[G]uns found in close proximity to drug activity are presumptively connected to that activity." Drozdowski, 313 F.3d at 823 (discussing accessibility as relevant factor). If a drug offender has stored a handgun that can readily be accessed if his drug activities turn sour, he may be said to have possessed it in connection with such activities. Cf. United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002) (recognizing that readily accessible firearm suggests close nexus between drug activities and firearm

possession). As the First Circuit Court explained, so long as a firearm's "location makes it readily available to protect either the participant's themselves during the commission of the illegal activity or the drugs and cash involved in the drug business, there will be sufficient evidence to connect the weapon to the offense conduct." United States v. Corcimiglia, 967 F.2d 724, 727 (1st Cir. 1992).

Again, in light of the above, it is important to note that the government submitted zero evidence as to any actual weapon involved in any location or proximity to the charged offenses. Importantly, a sentencing court faced with whether to apply the weapon enhancement is entitled to take reasonable account of the settled connection between firearms and drug activities. The Guidelines commentary explains, the weapons enhancement "reflects the increased danger of violence when drug traffickers possess weapons." U.S.S.G. Section 2D1.1 cmt. n.3. Nevertheless, it is the actual possession of a weapon "in connection with drug activities" that

the sentencing enhancement is properly
meant to punish.

The enhancement for weapon possession
"reflects the increased danger of violence when
drug traffickers possess weapons," and should
be applied if the weapon was present, unless
it is clearly improbable that the weapon was
connected with the offense. In example, the
enhancement would not be applied if the
defendant, arrested at his residence, had
an unloaded hunting rifle in the closet.
The application note confirms what is
fairly obvious from common sense, but
perhaps not from a literal reading of
U.S.S.G. section 2D1.1 (b)(1): mere
possession is not enough for application
of the enhancement.   The Fourth Circuit
stated as much in United States v. McCallister
, 272 F.3d 228, 233-34 (4th Cir. 2001) when
it found that the government must prove
that "the weapon was possessed in connection
with drug activity that was part of the
same course of conduct or common scheme
as the offense of conviction." Therefore,
for the enhancement to apply, the government
must prove not only that the defendant

possessed the weapon, but also that the weapon had a role in the offense of conviction.

Unless the defendant's words or actions explained the weapon's role, proving that the section 2D1.1(b)(1) enhancement applies will require evidence that the weapon had a temporal and spatial nexus to the offense. United States v. Willie, 462 F.3d 892, 899 (8th Cir. 2006); United States v. Clark, 415 F.3d 1234, 1241 (10th Cir. 2005); United States v. Partida, 385 F.3d 546, 562 (5th Cir. 2004). When the defendant's possession of the weapon is not established until long after the offense, the temporal nexus is not satisfied. See Clark, 415 F.3d at 1242 (rejecting application of enhancement when defendant was found in possession of gun 15 months after offense of conviction). Similarly, when the weapon is not in close proximity to the drugs or a drug related transaction, the spatial nexus is not satisfied. See United States v. Harris, 128 F.3d 850, 852 (4th Cir. 1997).

Here, there is absolutely no evidence on the record suggesting that Mr. Bowling had any weapon in his possession that

had either a temporal or spatial nexus to the offense of his conviction. As such, the enhancement should not have applied and his attorney was deficient for failing to object to the application of the enhancement both at his sentencing and again on direct appeal. Petitioner was clearly prejudiced by said ineffective assistance of counsel as his sentencing range would have been between 130-162 months rather than 151-188 (criminal history V, level 28).

Accordingly, petitioner requests an evidentiary hearing on this issue and resentencing based upon the findings of the Court related to the firearm enhancement's application, or lack thereof.

## II. Ineffective Assistance of Counsel At Sentencing (Amendment 794)

Sentencing counsel was ineffective for failing to investigate and request for downward sentencing adjustment pursuant to U.S.S.G. Amendment 794. In light of the fact that the government stated in petitioner's plea agreement that it would

not object to petitioner raising such a claim, and given petitioner's limited role in the alleged conspiracy in which he plead guilty, his sentencing counsel was ineffective for failing to petition the Court for a downward sentencing adjustment under Amendment 794. Further, petitioner's lawyer assured him that he would move the Court for said downward sentencing adjustment based upon petitioner's minor role in the conspiracy. Had his counsel been truthful and informed petitioner that he was not going to move the Court for a downward sentencing adjustment under Amendment 794, petitioner would have requested another lawyer to represent him at sentencing. Had his lawyer moved the Court as agreed, petitioner would likely have received a reduced sentence in light of the amendment's "mitigating role adjustment." U.S.S.G. App. C. Amend. 794 (Nov. 2015). Accordingly, petitioner was prejudiced by his lawyer's failure to investigate and request said sentencing adjustment.

On November 1, 2015, the United States Sentencing Commission issued Amendment 794 to the commentary of Section 3B1.2 of the U.S.S.G. based on its finding that minor role reductions were "applied inconsistently and more sparingly than the Commission intended." United States v. Quintero-Leyva, 823 F. 3d 519, 521 (9th Cir. 2016). Amendment 794 now helps sentencing courts identify "low level offenders" without a "propriety interest in the criminal activity" who may be considered for a "mitigating role adjustment." U.S.S.G. App. C. Amend. 794. (Nov. 2015). More specifically, Amendment 794 articulates that "the defendant is to be compared with the other participants in the crime, not with a hypothetical average participant." Quintero-Leyva, 823 F. 3d at 523 (quoting U.S.S.G. App. C. Amend. 794).

The United States Sentencing Commission Guidelines Manual states that "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." U.S.S.G. Section 1B1.11 (a) (Nov. 2015). Petitioner was

sentenced on October 24, 2018, well after Amendment 794 was issued by the Commission on November 1, 2015.

The language of Amendment 794 indicates that the Commission intended it to be a clarifying amendment. The Amendment changed the language that "may have had the unintended effect of discouraging courts from applying the mitigating role adjustment in otherwise appropriate circumstances." Id. Newly amended section 3B1.2 now states that "a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks" should be considered for the reduction and "the fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative." Id. The Amendment also included a non-exhaustive list of factors a court "should consider" in determining whether to apply a minor role reduction. Id. The factors are:

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity. U.S.S.G. Section 3B1.2 comment., n.3(C).

Petitioner respectfully requests an evidentiary hearing on this ground for relief at which the Court may consider whether petitioner would have

received the benefit of Amendment 794 had his attorney moved the Court for downward sentencing adjustment, and if petitioner was prejudiced by his lawyer's failure to request said sentencing adjustment under the Amendment.

Respectfully submitted,

Dated: 10/25/2020

Jacob Bowling
JACOB BOWLING
Prisoner no. 62444-037
FCI Cumberland
P.O. Box 1000
Cumberland, Md. 21501
(301) 784-1000

MR. Jacob Bowling FD# 62444-037
Federal CORRECTIONAL INSTITUTION
P.O. Box 1000
Cumberland, MARYland 21501





____ FILED          ____ ENTERED
____ LOGGED         ____ RECEIVED

NOV 0 3 2020

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

Clerk, United States District Court
101 W. Lombard Street
Baltimore, Maryland 21201