**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **KENNETH TORRY,** | * | |
| | * | |
| **v.** | * | **Criminal No. CCB-16-0267** |
| | * | |
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| | * | |
| | * | |
| | ******* | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION TO VACATE, SET
ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

The United States of America, by and through its undersigned counsel, respectfully submits this memorandum of law in opposition to petitioner Kenneth Torry's *pro se* motion to vacate, set aside, or correct his 168-month sentence for racketeering conspiracy and conspiracy to distribute controlled substances. ECF 1855. The petitioner argues that he would not be considered a Career Offender if sentenced today under current Fourth Circuit case law, and this change would result in a reduction in his advisory guidelines range from 262–327 months to 140–175 months.

The petitioner's § 2255 claim should be denied because (1) it is untimely; (2) it is procedurally defaulted; and (3) it is not cognizable on collateral review.

**FACTUAL BACKGROUND**

The indictment in this case stemmed from a lengthy investigation by the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") and other agencies into a violent subset of the Bloods gang known as Murdaland Mafia Piru ("MMP").

On May 9, 2017, Torry entered a plea of guilty to Counts One and Two of the Superseding Indictment, which charged him with conspiracy to participate in a racketeering enterprise, in violation of 18 U.S.C. § 1962(d), and conspiracy to distribute one kilogram or more of heroin and

280 grams or more of cocaine base, in violation of 21 U.S.C. § 846.   ECF 452 (Plea Agreement).

Pursuant to his plea agreement with the government, Torry admitted to the following facts that

formed the basis of the plea:

> The Defendant, Kenneth TORRY, a/k/a "Kenny," was an associate of Murdaland Mafia Piru ("MMP") during the dates of the racketeering conspiracy.   The Defendant agreed with members of MMP to conduct and participate in the gang's affairs through a pattern of racketeering activity that included offenses involving drug distribution.   MMP was an "enterprise" that affected interstate commerce.

> The Defendant agrees that the "Overt Acts" in which he is named in the Superseding Indictment represent an accurate sample of his activities in furtherance of the racketeering enterprise.

> In particular, on July 4, 2015, Co-Conspirator 1 called the Defendant from a recorded telephone at the Baltimore County Detention Center.   In the call, Co-Conspirator 1 instructed the Defendant to supply Person 2 with 200 grams of heroin on consignment.   The Defendant eventually agreed to supply 100 grams of heroin to Co-Conspirator 2 and another 100 grams of heroin to Co-Conspirator 1 when he was released from jail.   In a follow-up call, Co-Conspirator 1 informed Co-Conspirator 2 that the Defendant was getting ready to give him 100 grams of heroin, which would amount to at least "ten bands" (i.e., $10,000).

> On July 31, 2015, a search warrant was executed at the Defendant's residence at 21 Samantha Court, Owings Mills, Maryland.   Law enforcement officers recovered roughly 22 grams of marijuana, two cell phones, and a Jiminez Arms 9mm Luger caliber firearm with an obliterated serial number that was chemically restored and found to be 300588.   The Defendant is prohibited from possessing a firearm based on previous felony convictions.   After being advised of his *Miranda* rights, the Defendant admitted that the firearm was his.

> The Defendant's cell phones were forensically analyzed pursuant to a search warrant.   One of the cell phones contained numerous text messages indicating that the Defendant was regularly supplying heroin to members of MMP.   For instance, on June 6, 2015, the Defendant sent Co-Conspirator 3 a text message offering to supply him with 10 grams of heroin for distribution.   Later in the day, Co-Conspirator 3 sent the Defendant a text message indicating that customers were saying they did not like the quality of the heroin.   On June 9, 2015, the Defendant sent a text message to Co-Conspirator 3 indicating that he had a supply of high-quality heroin for sale.   The Defendant stated, "Got all 9s on this.....still a little soft but good they gonna like it."   Co-Conspirator 3 told the Defendant to "[c]ome holla at me."   On June 12, 2015, Co-Conspirator 3 agreed to help the Defendant sell 100 grams of heroin.

Also on June 12, 2015, the Defendant sent Co-Conspirator 1 a text message asking when Co-Conspirator 1 would be ready with the payment for 100 grams of heroin that had been provided to him on consignment.  Co-Conspirator 1 used coded language to indicate that he would not be able to sell off the heroin until the police presence in the area died down, saying: "It's scorching.  He can get this hundon back until it cool down.  When I'm done I will take u to c the president."

On June 29, 2015, the Defendant exchanged text messages with an unknown co-conspirator in which they discussed problems they were having mixing a supply of heroin.  The Defendant stated: "I tried everything.  Sitting it in rice made it brown.  Wutever is in it is not coexisting with the heroin."

Although the Defendant never joined MMP, the Defendant agrees that he conspired with members of MMP to distribute heroin and cocaine base in furtherance of the gang, and that it was reasonably foreseeable to him that between one and three kilograms of heroin and between 280 and 840 grams of cocaine base would be distributed by members of the conspiracy.

*Id.* at 4–5.

With respect to the Sentencing Guidelines calculation, the parties agreed and stipulated that the applicable base offense level was 37 pursuant to U.S.S.G. § 4B1.1(b)(1) because the defendant was a career offender, and there was a three-level reduction in the offense level pursuant to U.S.S.G. §§ 3E1.1(a) and (b) based on Torry's timely acceptance of responsibility.  *Id.* at 6.  The adjusted offense level was 34.  *Id.*  Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agreed to recommend a sentence of between 156 months and 180 months of incarceration in the Bureau of Prisons.  *Id.* at 6–7.

The United States Probation Office prepared a Presentence Investigation Report (PSR) in advance of sentencing.  ECF 567 (PSR).  According to the PSR, Torry's base offense level was 30 pursuant to U.S.S.G. § 2D1.1(c)(5) based on the quantity of heroin and cocaine base involved in the offense, and there was a 2-level increase in the offense level pursuant to U.S.S.G. § 2D1.1(b)(1) because Torry possessed a firearm in connection with the offense.  *Id.* at 6–7.  However, the U.S. Probation Office agreed with the parties that Torry was a career offender pursuant to U.S.S.G.

§ 4B1.1(b) because (1) the instant offense of conviction—conspiracy to distribute heroin and cocaine base, in violation of 21 U.S.C. § 846—was a felony that was a controlled substance offense, and (2) Torry had two prior state felony narcotics distribution convictions that were controlled substance offenses.  *Id.* at 12.[1]  Because of the career offender designation, the base offense level became 37.  *Id.* at 7.  There was a 3-level reduction in the offense level pursuant to U.S.S.G. §§ 3E1.1 because of Torry's timely acceptance of responsibility, resulting in an adjusted offense level of 34.  *Id.*  Torry's criminal convictions scored 12 "natural" criminal history points, putting him in Criminal History Category V.  *Id.* at 12.  Because of the career offender designation, however, the criminal history category became VI.  *Id.*  Based on an offense level 34 and criminal history category VI, the advisory guidelines range was 262–327 months.  *Id.* at 17.

The sentencing took place on August 3, 2017.  The district court adopted the PSR's calculations without objection by the parties.  ECF 1878 (Sentencing Transcript) at 3–4.  However, both parties agreed that the career offender guidelines of 262–327 months were too high.  *Id.* at 4–6 (government), 7–9 (defense).  The government advocated for a sentence of 168 months, which was in the middle of the negotiated C-plea range of 156–180 months and also within the non-career offender guideline range of 140–175 months.  *Id.* at 4–6; *see also* ECF 572 (Government's Sentencing Memorandum).  The district court ultimately agreed with the government's recommendation and imposed a below-guidelines sentence of 168 months.  ECF 1878 at 13; *see also* ECF 585 (Judgment).  The court specifically stated that "the career offender status, while I think it's correct, is higher than necessary in this case."  ECF 1878 at 13; *see also* ECF 586

---

[1]     These were a 1998 conviction for CDS: PWID Manufacture/Dispense in the Circuit Court of Maryland for Baltimore City, for which Torry was sentenced to 5 years in custody with 4 years suspended; and a 2006 conviction for CDS Dispense/Manufacture/Distribute in the Circuit Court of Maryland for Baltimore City, for which he was sentenced to 10 years in custody with 8 years suspended.  ECF 567 (PSR) at ¶¶ 36, 40.

(Statement of Reasons) at 3 (indicating that a downward variance was justified because the "[c]areer offender guidelines based on narcotics offenses are too high").

Torry did not appeal his conviction or sentence. On August 14, 2023, he filed a motion for compassionate release, arguing, in part, that he would no longer be considered a career offender in light of "recent" Fourth Circuit authority, according to which an § 846 drug conspiracy no longer qualified as a "controlled substance offense" under U.S.S.G. § 4B1.1. ECF 1827 at 1–2. The district court denied Torry's motion on May 1, 2024. ECF 1852.

Torry filed the instant § 2255 petition on May 20, 2024. ECF 1855.

## ARGUMENT

Torry's § 2255 petition should be denied. At the outset, Torry is correct that if he were sentenced today, he would not be considered a career offender because of the Fourth Circuit's decision in *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019), which held that a federal drug conspiracy in violation of 21 U.S.C. § 846 does not qualify as a "controlled substance offense" for purposes of U.S.S.G. § 4B1.1(b). Absent the career offender designation, Torry would be at offense level 29 and criminal history category V, resulting in an advisory guidelines range of 140–175 months.

Nonetheless, Torry's claim fails, for three reasons. First, Torry did not file his § 2255 motion within the one-year statute of limitations, and he is not entitled to equitable tolling. Second, he did not raise the claim on direct review, and he cannot show cause for his procedural default. Third, his claim that the advisory guidelines were improperly calculated is not cognizable on collateral review. And even if it were, Torry would not prevail because he was sentenced to 168 months, which is within the correctly-calculated guidelines range.

## I.     Torry's Petition Is Untimely

Petitions for collateral relief filed pursuant to 28 U.S.C. § 2255 are subject to a one-year statute of limitations governed by § 2255(f).  The one-year clock is triggered by one of four conditions, whichever occurs latest:

> (1) the date on which the judgment becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental inaction;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1)–(4).

Torry did not file his § 2255 motion until May 20, 2024, almost seven years after his judgment became final.  He attempts to excuse this delay, saying, "Due to limited and lack of resources, I only became aware of the [change in] Fourth Circuit case law concerning the career offender consideration approximately 9 months ago."  ECF 1855 at 12.  However, a change in Circuit Court case law does not qualify as an event that resets the one-year statute of limitations under § 2255(f).  *Whiteside v. United States*, 775 F.3d 180, 183–84 (4th Cir. 2014) (explaining that a change in law is not a "factual predicate" that resets the one-year clock under § 2255(f)(4), and a contrary interpretation would render § 2255(f)(3) superfluous); *Minter v. Beck*, 230 F.3d 663, 666 (4th Cir. 2000) (rejecting, in a similar context, defendant's attempt to invoke a change in law as an "impediment" to filing a habeas petition sufficient to toll AEDPA's statute of limitations).  And, in any event, the Fourth Circuit case that negated Torry's career offender status, *United States*

*v. Norman*, 935 F.3d 232 (4th Cir. 2019), was decided on August 15, 2019, nearly five years ago. Even if the rule announced in *Norman* somehow restarted the one-year clock under §§ 2255(f)(2) or (f)(4), Torry did not file his § 2255 motion within one year of that decision.

Nor is Torry entitled to equitable tolling of the statute of limitations.  Equitable tolling of petitions for collateral review is available only when a defendant demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010).  Torry cannot satisfy either of these requirements.  The Fourth Circuit has made clear that alleged "futility"—*i.e.*, unfavorable precedent that would have rendered a timely claim unsuccessful—does not justify equitable tolling. *Whiteside*, 775 F.3d at 184–86 ("Equitable tolling … may not be applied where, as here, the only impediment to timely filing was the discouragement felt by petitioner when calculating his odds of success.").  And in any event, the change in Fourth Circuit law addressing Torry's career offender status does not explain his nearly five-year delay in filing his § 2255 motion after *Norman* was decided.

Accordingly, Torry's § 2255 motion should be dismissed as untimely.

## II.     Torry's Claim is Procedurally Defaulted

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citing *Murray v. Carrier*, 477 U.S. 478, 485, 496 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); and *Smith v. Murray*, 477 U.S. 527, 537 (1986)).

Torry's only explanation for failing to raise his claim on direct appeal is that, "Due to limited and lack of resources, I only became aware of the [change in] Fourth Circuit case law

concerning the career offender consideration approximately 9 months ago." ECF 1855 at 12. But just as the futility of a claim cannot justify equitable tolling of the statute of limitations, it also "cannot serve as 'cause' for a procedural default in the context of collateral review." *Whiteside*, 775 F.3d at 185; *see also Bousley*, 523 U.S. at 623 ("[F]utility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time."). Rather, "[t]he demands of finality oblige a petitioner to raise those claims that might possibly have merit even where 'he thinks [the court] will be unsympathetic to the claim;' otherwise the claim is considered procedurally defaulted." *Whiteside*, 775 F.3d at 185 (citing *Bousley*, 523 U.S. at 130).

Here, the futility of Torry's claim prior to the Fourth Circuit's decision in *Norman* does not amount to "cause" that excuses his failure to raise the claim on direct appeal. This is particularly so where Torry did not bring his § 2255 motion until nearly five years after *Norman* was decided—suggesting that unfavorable precedent was not the true cause of Torry's default. And Torry does not even attempt to show the requisite "prejudice" or "actual innocence." Therefore, his § 2255 motion is procedurally barred.

## III.   Torry's Claim is Not Cognizable on Collateral Review

Even if Torry could avoid these procedural bars to his claim, it would still fail on the merits. The federal habeas statute provides four avenues by which a petitioner can seek to vacate, set aside, or correct his sentence. The petitioner must show:

> (1) "that the sentence was imposed in violation of the Constitution or laws of the United States,"

> (2) "that the court was without jurisdiction to impose such sentence,"

> (3) "that the sentence was in excess of the maximum authorized by law," or

> (4) that the sentence "is otherwise subject to collateral attack."

28 U.S.C. § 2255(a).  The Supreme Court has interpreted this provision to mean that if the alleged sentencing error is neither constitutional nor jurisdictional, a district court lacks authority to review it unless it amounts to "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974)).  And the Supreme Court has held that a petitioner's § 2255 claim that post-sentencing changes in Parole Commission policy prolonged his imprisonment beyond the period of time intended by the sentencing judge did not meet this high bar.  *United States v. Addonizio*, 442 U.S. 178, 190 (1979).  The Court reasoned that the sentence imposed by the district court was "within the statutory limits," and, although the changes in policy may have affected "the way in which the court's judgment and sentence would be performed," "it did not affect the lawfulness of the judgment itself—then or now." *Id.* at 186–87.

Relying on this precedent, the Fourth Circuit has held that "misapplication of the [advisory] sentencing guidelines does not amount to a miscarriage of justice" that is cognizable under § 2255. *United States v. Mikalajunas*, 186 F.3d 490, 495 (4th Cir. 1999).  And more recently, addressing a claim nearly identical to the one advanced here, the Fourth Circuit concluded that "sentencing a defendant pursuant to advisory Guidelines based on a career offender status that is later invalidated" is not an error that can be corrected on collateral review. *United States v. Foote*, 784 F.3d 931, 936 (4th Cir. 2015).  This was true even though the petitioner in *Foote* "challenged his career offender designation at every step, met all applicable deadlines . . . , and his career offender designation increased dramatically his advisory Guidelines range." *Id.* at 944.

It is clear under *Foote* that, although Torry is correct that he would not be considered a career offender if sentenced today, his claim is not cognizable under § 2255.  And even if it were, his claim would still fail—*because he was not sentenced as a career offender*.  The sentencing court agreed with the parties that the career offender designation was inappropriate in Torry's case,

and instead sentenced him to 168 months, which was squarely within the non-career offender guidelines range.  Put another way, the Fourth Circuit's later invalidation of Torry's career offender status in *Norman* had no effect on his sentence.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny Torry's § 2255 motion to vacate, set aside, or correct his sentence.

Respectfully Submitted,

Erek L. Barron
United States Attorney


By: _____/s/_____
Christina A. Hoffman
Assistant United States Attorney

36 S. Charles Street, Fourth Floor
Baltimore, Maryland 21201
Tel: (410) 209-4800
Fax: (410) 962-3124

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 22, 2024, I caused a copy of the foregoing to be sent via first-class mail to:

> Kenneth Vaughn Torry, pro se
> Fed. Reg. No. 62445-037
> F.C.I. Danbury
> 33 ½ Pembroke Road
> Danbury, CT 06811

_____/s/_____
Christina A. Hoffman
Assistant United States Attorney