IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ADRIAN JAMAL SPENCE, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | CRIMINAL NO. LKG-16-0267 |
| | * | |
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Respondent. | | |

*******

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S PRO SE MOTION TO REDUCE SENTENCE UNDER AMENDMENT 821 (ECF 1839)

Adrian Spence, a/k/a "Spittle," was a high-ranking member of a violent subset of the Bloods gang known as Murdaland Mafia Piru (MMP). Over a roughly five-year period from 2011 to 2015, he supplied large volumes of heroin to members of the gang, and he was frequently in possession of firearms, which he used to enforce drug debts and intimidate rivals of the gang. On September 25, 2018, Spence pled guilty to one count of Racketeering Conspiracy, in violation of 18 U.S.C. § 1962. ECF 894 (Arraignment). He agreed to a sentence of 180 months in prison pursuant Federal Rule of Criminal Procedure 11(c)(1)(C). That same day, Spence was sentenced to 180 months, in accordance with the plea agreement. ECF 902 (Judgment).

Despite receiving the sentence he bargained for under the C-plea agreement, Spence is now seeking a sentencing reduction under 18 U.S.C. § 3582(c)(2) based on Amendment 821 to the United States Sentencing Guidelines. ECF 1839. In his *pro se* filing, Spence argues that he is eligible for a reduction due to the retroactive changes made to U.S.S.G. § 4C1.1, which call for a 2-point decrease in the offense level if the defendant has zero criminal history points and meets certain other criteria. *Id.*

Spence's motion should be denied for two reasons. First, he cannot demonstrate he is eligible for the reduction under U.S.S.G. § 1B1.10(b)(2)(b) because he is not a "zero-point offender" under the amended U.S.S.G. § 4C1.1. Second, even if he could establish baseline eligibility, this Court should deny relief because Spence's sentence remains consistent with the factors outlined in 18 U.S.C. § 3553(a), reflecting the severity of his crimes, his pattern of criminal behavior, and the need for deterrence and protection of the public.

## FACTUAL BACKGROUND

Spence was charged with one count of conspiracy to participate in a racketeering enterprise, in violation of 18 U.S.C. § 1962 (Count 1); and one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) (Count 7).

On September 25, 2018, Spence pled guilty to Count 1. ECF 894. The plea agreement was entered into under Rule 11(c)(1)(C) and included a binding recommendation of 180 months in prison. As part of his plea agreement, Spence admitted to the following facts:

> Murdaland Mafia Piru ("MMP"), also known as the "Mob" or "Mobsters," was a violent subset of the Bloods gang that operated in Maryland and elsewhere from at least prior to 2011 until the date of the Second Superseding Indictment. MMP was modeled after the Italian Mafia, and was organized hierarchically with a "Don" at the top and various "Bosses," "Underbosses," "Capos," "Lieutenants," and "Mobsters" underneath. For many years, MMP controlled the drug trade in large swaths of Northwest Baltimore City. The gang's drug shop in the 5200 block of Windsor Mill Road was particularly lucrative due to its close proximity to Interstate 70, and it frequently attracted drug customers driving from western Maryland and neighboring states. MMP's members and associates functioned as a continuing unit for the common purposes of enriching themselves through drug trafficking and other criminal activities, and using violence and threats of violence—including murder—to intimidate or retaliate against witnesses, protect the gang's territories, enforce debts, and eliminate rivals.
>
> The Defendant, Adrian Jamal SPENCE, a/k/a "Spittle," a/k/a "SP," a/k/a "AJ," was a member of MMP during the dates of the racketeering conspiracy. The Defendant agreed with members of MMP to conduct and participate in the gang's

affairs through a pattern of racketeering activity that included offenses involving drug distribution.  MMP constituted an enterprise engaged in, and whose activities affected, interstate or foreign commerce.

On January 3, 2011, the Defendant threatened to kill a drug customer who owed him a drug debt.  The Defendant sent the customer a text message saying, "Yo I want my money or my dope or im goin kill u today."  The customer replied, "im sorry dude. im sick!!!! ill get you your $. that's the last thing I wanted to do to you. please believe me."  The Defendant replied, "I don't give a fu** how sick u were I want my fu**n money.  And im not goin wait either or people goin die."  A few minutes later, the Defendant sent a text message to a second individual that said, "Yo ill give you some money or some girl I jus need his address and his parents address.ima make an example out of This motherfu**er."

On March 6, 2011, the Defendant exchanged text messages with a drug customer.  The Defendant agreed to sell the customer 3.5 grams of heroin in exchange for a .380 caliber firearm and 50 rounds of ammunition.

On November 1, 2013, the Defendant was featured in an MMP rap video entitled "Str8 Mobbin" that was published on YouTube.  In the opening scene of the video, Co-Defendant 1 is shown taking a call from Co-Defendant 2, who says "nig**s talkin' about they run the city; it's time to turn up on these nig**s, man."  Co-Defendant 1 replies, "Say no more; just get the Mob together, and we gonna show these nig**s what it is."  The rap video then features the Defendant with Co-Defendant 1, Co-Defendant 2, Co-Defendant 3, Co-Defendant 4, and others rapping and making gang signs in MMP's drug territory in the 5200 block of Windsor Mill Road.  The lyrics include references to killing people who stand in the way of the gang, and members of the gang brandish firearms in the video.

In June and July 2015, investigators conducted a court-authorized wiretap of several cell phones belonging to the Defendant.  The Defendant was intercepted in numerous calls discussing drug distribution.  For instance, on June 17, 2015, in wire calls D-171 and D-188, the Defendant agreed to supply 50 grams of heroin to Co-Defendant 5 for distribution.  On June 20, 2015, in wire call D-270, the Defendant informed Co-Defendant 6 that he had just purchased a new supply of heroin and that a drug customer of his thought the quality of the heroin was "good . . . like an eight-and-a-half, nine."  Co-Defendant 6 told the Defendant he was working on getting a supply of the heroin.  On June 30, 2015, in wire calls D-483, D-484, D-485, and D-488, the Defendant agreed to supply Co-Defendant 7 with 12 grams of heroin for distribution.  On July 6, 2015, in wire calls D-660, D-663, D-

674, D-679, and D-680, the Defendant agreed to supply Co-Defendant 7 with 20 grams of heroin for distribution. On July 6, 2015, in wire call D-664, the Defendant agreed to supply Co-Defendant 8 with 40 grams of heroin for distribution. In wire calls B-2384, B-2645, and B-3239, between July 6, 2015 and July 16, 2015, the Defendant agreed to purchase a firearm and ammunition from Co-Defendant 3. On July 9, 2015, in wire call D-734, the Defendant agreed to supply Co-Defendant 5 with 100 grams of heroin for distribution.

On July 20, 2015, a search warrant was executed at 532 Coventry Road, a known stash house used to store and package heroin that the Defendant supplied to other members and associates of MMP. During the search of the residence, law enforcement officers recovered approximately 608 grams of heroin, cutting agents, drug packaging materials, a digital scale, and a hydraulic press.

On July 23, 2015, in wire call G-232, the Defendant told Co-Defendant 6 about an attempted murder at the BP gas station in the 5200 block of Windsor Mill Road the previous night. The Defendant explained that "Big Man [*i.e.*, Co-Defendant 1] and them was tryin' to really fix [the victim] up," but "while they fixin' him up," the "nig**s that was with him" began shooting back and "it was basically a shootout, for real. . . . Nig**s was really dumpin', for real." The Defendant also advised Co-Defendant 6 that about ten minutes before the shootout, members of MMP had assaulted another individual because he was selling drugs on their turf. As the Defendant described it, "Nig**s really knocked Yo out. Whole jaw was hanging in a big-ass puddle of blood."

On July 27, 2015, in wire call G-323, the Defendant agreed to supply Co-Defendant 9 with 20 grams of heroin for distribution. On July 30, 2015, in wire call G-396, the Defendant asked to purchase 50 grams of heroin for $4,000 from Co-Defendant 4. Co-Defendant 4 told the Defendant that Co-Defendant 8 was on his way to see a supplier, and he would let the Defendant know the price.

On July 31, 2015, a search warrant was executed at the Defendant's residence at 338 Marydell Road. In the search of the residence, law enforcement officers recovered the following items belonging to the Defendant:

- an Israel .40 caliber firearm with serial number 34319036, loaded with nine rounds;
- fourteen cell phones; and
- $26,520 in U.S. currency.

> The Defendant agrees that he conspired with members of MMP to distribute one kilogram or more of heroin and 280 grams or more of cocaine base in furtherance of the gang, and that it was reasonably foreseeable to him that between one and three kilograms of heroin and between 280 and 840 grams of cocaine base would be distributed by members of the conspiracy.

Exhibit 1 (Plea Agreement) at 11–13.[1]

A presentence report was not prepared because Spence had recently been sentenced in a related federal drug conspiracy case, and the parties agreed to rely on the PSR prepared in connection with that case. *See United States v. Adrian Jamal Spence*, D. Md. RDB-15-0541, ECF 156 (PSR). That PSR showed that Spence had a 2010 Maryland felony conviction for Controlled Dangerous Substance (CDS): Possession with Intent to Distribute (PWID), which scored one criminal history point. *Id.* ¶ 27. Accordingly, in the plea agreement, the parties agreed that "the Defendant is in Criminal History Category I based on one criminal history point." Exhibit 1 at 5; *see also* Exhibit 2 at 16, 21. The parties also agreed that the offense level for the racketeering conspiracy was 30 pursuant to U.S.S.G. § 2E1.1(a) and § 2D1.1(c)(5), and there was a 2-level increase in the offense level pursuant to U.S.S.G. § 2D1.1(b)(1) because Spence possessed a firearm. Exhibit 1 at 4–5; Exhibit 2 at 15–16, 19. Spence received a two-level reduction in the offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a), bringing the total offense level to 30. Exhibit 1 at 4–5; Exhibit 2 at 15–16, 20–21. Based on an offense level of 30 and a criminal history category of I, the guidelines range was 97 to 121 months. Exhibit 2 at 25.

---

[1] The plea agreement does not appear to have been entered on the docket. However, the court reviewed the agreement at length at the arraignment, *see* Exhibit 2 (Transcript of Arraignment & Sentencing) at 10–21, and Spence acknowledged that the court gave a "correct summary" of the agreement, *id.* at 19. Exhibit 1 is a true copy of the plea agreement that was submitted to Judge Blake's chambers by e-mail on September 21, 2018. To the best of undersigned counsel's recollection, it is the same plea agreement that was signed by Spence and entered in court on September 25, 2018. It is also consistent with what was discussed at the arraignment and sentencing.

At the sentencing on September 25, 2018, the district court adopted the parties' guidelines calculations, as set forth in the plea agreement. Exhibit 2 at 15–25. The court sentenced Spence to 180 months, which was above the guidelines range, but was the agreed-upon C-plea sentence. ECF 902 (Judgment). In fashioning the sentence, the court explained that this was "a very serious offense" which involved "not just a substantial quantity of drugs, which obviously is very serious and kills people and destroys people's families, but this also has a very serious element of violence." *Id.* at 35–36. The court found that "there's clearly enough indication of violence and the use of weapons and involvement in a dangerous and violent drug-trafficking organization to require a serious sentence, a need for deterrence, and protecting the public." *Id.* at 36. And the court noted that Spence "had a very significant role in this conspiracy." *Id.* at 37.

## ARGUMENT

Federal law provides that a court may reduce a sentence after it has been imposed where the defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o)." 18 U.S.C. § 3582(c)(2). The court may reduce such a sentence only "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

The Fourth Circuit has held that district courts must employ a two-step approach in considering 3582(c)(2) motions. "First, a court must determine the defendant's eligibility. Section 3582(c)(2) permits a reduction only if (1) the defendant's 'term of imprisonment [was] based on a sentencing range that has subsequently been lowered by the Sentencing Commission,' and (2) the reduction 'is consistent with applicable policy statements issued by the Sentencing Commission.' § 3582(c)(2). Second, the court may grant the authorized reduction 'after considering the factors

6

set forth in section 3553(a) to the extent that they are applicable.'" *United States v. Peters*, 843 F.3d 572, 574 (4th Cir. 2016) (citing § 3582(c)(2)). "The ultimate decision of '[w]hether to reduce a sentence and to what extent' is committed to the district court's discretion." *Id.*

Here, despite receiving the precise sentence for which he bargained under Rule 11(c)(1)(C), Spence has filed a petition seeking a sentence reduction under Amendment 821 of the guidelines. While this amendment has been made retroactive, it is clear that Spence is not eligible for any relief. And even if he were, this Court should decline to exercise its discretion under the 3553(a) factors.

A.  **Spence Is Not Eligible For a Sentence Reduction**

As described above, a court may only modify a term of imprisonment if the sentencing range that was used to establish the defendant's sentence has subsequently been lowered by the Sentencing Commission. 18 U.S.C. § 3582(c)(2); *see also* U.S.S.G. § 1B1.10(a)(2)(B) (providing that a defendant is not eligible for a sentence reduction if the retroactively applicable amendment "does not have the effect of lowering the defendant's applicable guidelines range").

Here, Spence's sentencing range has not been lowered by the Sentencing Commission. Part B to Amendment 821 to the Sentencing Guidelines amended U.S.S.G. § 4C1.1 to decrease the defendant's offense level by 2 levels if he is a so-called "zero-point offender," meaning that he meets "*all* of the following criteria":

(1) the defendant did not receive any criminal history points from Chapter Four, Part A;

(2) the defendant did not receive an adjustment under § 3A1.4 (Terrorism);

(3) the defendant did not use credible threats of violence in connection with the offense;

(4) the offense did not result in death or serious bodily injury;

(5) the instant offense of conviction is not a sex offense;

(6) the defendant did not personally cause substantial financial hardship;

(7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(8) the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);

(9) the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and

(10) the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848.

U.S.S.G. § 4C1.1(a) (emphasis added). Here, Spence does not satisfy U.S.S.G. § 4C1.1(a)(1) because he received one criminal history point for a prior Maryland felony drug conviction. *See* Exhibit 1 at 5 ("This Office and the Defendant agree that the Defendant is in Criminal History I based on one criminal history point."); Exhibit 2 at 16 ("You have an agreement with the Government that you would be in Criminal History Category I based on one criminal history point . . . ."); *United States v. Adrian Jamal Spence*, D. Md. RDB-15-0541, ECF 156 (PSR) ¶ 27. Therefore, he is not a zero-point offender. In addition, Spence does not satisfy U.S.S.G. § 4C1.1(a)(3) because he admitted in his plea agreement and at the plea colloquy to using credible threats of violence in order to enforce drug debts and intimidate rivals. *See* Exhibit 1 at 11 ("On January 3, 2011, the Defendant threatened to kill a drug customer who owed him a drug debt."); *id.* at 11–12 (admitting to participating in a rap video in which members of the gang brandished firearms, made gang signs, and made reference to killing people who stood in the way of the gang); Exhibit 2 at 13 (referring to these facts as described in the plea agreement). And Spence does not satisfy U.S.S.G. § 4C1.1(a)(7) because he admitted in his plea agreement to possessing a firearm

in connection with the offense.  *See* Exhibit 1 at 5 (agreeing to a 2-level increase in the offense level pursuant to U.S.S.G. § 2D1.1(b)(1) because the defendant possessed a firearm); *id.* at 12–13 (admitting that in a search of his residence on July 31, 2015, "law enforcement officers recovered the following items belonging to the Defendant: an Israel .40 caliber firearm with serial number 34319036, loaded with nine rounds . . ."); Exhibit 2 at 15 ("[Y]ou have an agreement with the government about . . . an increase of two because of your possession of the firearm . . .").

Because Amendment 821 does not apply to Spence and does have the effect of lowering Spence's guidelines range, he is ineligible for relief.  U.S.S.G. § 1B1.10(a)(2)(B); *United States v. Nickens*, 668 F. App'x 20, 21 (4th Cir. 2016) (defendant not eligible for reduction where amendment does not have the effect of lowering applicable range); *United States v. Vance*, Case No. 2:22-cr-00057, 2024 WL 233467 (S.D.W.V. Jan. 22, 2024) (defendant not eligible for sentence reduction because "she was not a zero-point offender"); *United States v. Williams*, Case No. 3:22-cr-00008, 2024 WL 765896 (W.D. Va. Feb. 16, 2024) (defendant not eligible for sentence reduction even though he had zero criminal history points because he used violence or credible threats of violence and possessed a firearm in connection with the offense).

**B.     Even if Spence Were Eligible, the Court Should Still Deny a Reduction Based Upon the § 3553(a) Factors.**

Alternatively, even if he were eligible for a sentence reduction under Amendment 821, Spence's motion should still be denied based on the factors outlined in 18 U.S.C. § 3553(a).  Spence was a high-ranking member of a murderous gang who distributed vast quantities of deadly drugs and used firearms in furtherance of the gang.  As the district court explained at sentencing, the 180-month prison term serves to reflect the gravity of the offense, deter both Spence and others from similar criminal conduct, and protect the public from further violent crimes by Spence.  Exhibit 2 at 36–37.

9

## CONCLUSION

Based on the foregoing, the Government respectfully requests that the Court deny Spence's motion for a reduced sentence.

>                Respectfully submitted,
>
>                Erek L. Barron
>                United States Attorney
>
> By:____/s/_____
>                Christina A. Hoffman
>                Assistant United States Attorney
>                36 South Charles Street
>                Fourth Floor
>                Baltimore, Maryland 21201
>                (410) 209-4800

## **CERTIFICATE OF SERVICE**

I hereby certify that this response in opposition was filed with the Court via CM/ECF, and that a hard copy was served on the defendant by U.S. Mail addressed as follows:

ADRIAN JAMAL SPENCE
Register Number: 59400-037
FCI McKean
6975 Route 59
Lewis Run, PA 16738

By:____/s/_____
Christina A. Hoffman
Assistant United States Attorney
36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201
(410) 209-4800