IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DEVON DENT,** | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | **CRIMINAL NO. LKG-16-0267** |
| | * | |
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| Respondent. | | |

\*\*\*\*\*\*\*

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S PRO SE MOTION TO REDUCE SENTENCE UNDER AMENDMENT 821 (ECF 1909)

Devon Dent was a member of a violent subset of the Bloods gang known as Murdaland Mafia Piru (MMP). Over a roughly four-year period from 2012 to 2015, he sold drugs in furtherance of the gang. And he stood by and looked on when a fellow gang member attempted to murder a rival of the gang, shooting him multiple times in the head and torso with a .45 caliber firearm. On February 27, 2019, Dent pled guilty to one count of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), and one count of conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846. ECF 1018 (Plea Agreement). Although he was a career offender with guidelines of 292 to 365 months, he received a below-guidelines sentence of 168 months. ECF 1226 (Judgment), ECF 1227 (Statement of Reasons).

Despite receiving a below-guidelines sentence, Dent is now seeking a sentence reduction under 18 U.S.C. § 3582(c)(2) based on Amendment 821 to the United States Sentencing Guidelines. ECF 1909. In his *pro se* filing, Dent points to the retroactive changes made to U.S.S.G. § 1B1.10 and requests "a 2 point reduction in the total of criminal history points." *Id.*

Dent's petition should be denied for two reasons. First, he cannot demonstrate he is eligible for the reduction under U.S.S.G. § 1B1.10(b)(2)(A) because his criminal history category was not

affected by the "status points" he received for committing the offense while under a criminal justice sentence; rather, he was sentenced as a career offender. Second, even if he could establish baseline eligibility, this Court should deny relief because Dent's sentence remains consistent with the factors outlined in 18 U.S.C. § 3553(a), reflecting the severity of his crimes, his pattern of criminal behavior, and the need for deterrence and protection of the public.

## FACTUAL BACKGROUND

On February 27, 2019, Dent pled guilty to one count of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), and one count of conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846. ECF 1018 (Plea Agreement). As part of his plea agreement, Dent admitted to the following facts:

> Murdaland Mafia Piru ("MMP"), also known as the "Mob" or "Mobsters," was a violent subset of the Bloods gang that operated in Maryland and elsewhere from at least prior to 2011 until the date of the Superseding Indictment. MMP was modeled after the Italian Mafia, and was organized hierarchically with a "Don" at the top and various "Bosses," "Underbosses," "Capos," "Lieutenants," and "Mobsters" underneath. For many years, MMP controlled the drug trade in large swaths of Northwest Baltimore City. The gang's drug shop in the 5200 block of Windsor Mill Road was particularly lucrative due to its close proximity to Interstate 70, and it frequently attracted drug customers driving from western Maryland and neighboring states. MMP's members and associates functioned as a continuing unit for the common purposes of enriching themselves through drug trafficking and other criminal activities, and using violence and threats of violence—including murder—to intimidate or retaliate against witnesses, protect the gang's territories, enforce debts, and eliminate rivals. For these and other reasons, MMP constituted an enterprise engaged in, and whose activities affected, interstate or foreign commerce.
>
> The Defendant, Devon DENT, a/k/a "Tech," was a member of Murdaland Mafia Piru ("MMP") during the dates of the racketeering conspiracy. The Defendant agreed with members of MMP to conduct and participate in the gang's affairs through a pattern of racketeering activity that included offenses involving drug distribution. The Defendant agrees that the "Overt Acts" in which he is named in the Superseding Indictment represent an accurate sample of his activities in furtherance of the racketeering enterprise.

In particular, on October 15, 2012, the Defendant was present when Co-Defendant 1 attempted to murder S.H., shooting him multiple times in the head and torso with a .45 caliber firearm outside Club Mirage in downtown Baltimore. A closed-circuit television ("CCTV") camera captured the incident, and showed the Defendant arriving at Club Mirage with Co-Defendant 1 as well as Co-Defendant 2, Co-Defendant 3, and Co-Defendant 4. Co-Defendant 3 was wearing a red shirt with the words "MOBB SQUAD" on the back, and he filmed the victim with a tablet device shortly before the shooting.

On November 4, 2012, the Defendant possessed with intent to distribute roughly 12 grams of heroin and 21 grams of cocaine base. The Defendant also possessed MMP paperwork laying out the history and structure of the gang, as well as certain rules of conduct, including that "retaliation is a must," and that "co-operation with authorities that lead[s] to incriminating others" is punishable by death.

On April 15, 2015, in the 3500 block of Gwynn Oak Avenue, the Defendant distributed cocaine base to an undercover officer who was wearing an audio-video recording device.

On April 22, 2015, in the 4700 block of Gwynn Oak Avenue, the Defendant distributed cocaine base to an undercover officer who was wearing an audio-video recording device.

On February 1, 2016, Co-Defendant 5 sent a letter to Co-Defendant 2 at the Baltimore County Detention Center enclosing photographs picturing the Defendant with Co-Defendant 2, Co-Defendant 4, Co-Defendant 3, Co-Defendant 6, Co-Defendant 7, and other MMP members wearing red items of clothing and making MMP gang signs.

Between April 3, 2016 and April 23, 2016, the Defendant made a series of calls to Co-Defendant 8 from a recorded jail telephone at the Baltimore City Detention Center in which they discussed MMP business. On April 3, 2016, the Defendant advised Co-Defendant 8 to be careful because the undercover officer involved in his case "still be coming up there video-ing sh**" and "nig**s still be giving it to him." The Defendant also gave Co-Defendant 8 a detailed description of the undercover officer so that Co-Defendant 8 could avoid making drug sales to him. In a subsequent call, the Defendant reminisced about an MMP party he attended with Co-Defendant 2, Co-Defendant 5, Co-Defendant 9, and others. The Defendant recalled that they brought "an ounce of molly" (a reference to 3, 4-Methylenedioxymethamphetamine)

3

and "a quarter pound of loud" (a reference to marijuana), and that he spent over $5,000 on the trip.  Co-Defendant 8 and the Defendant also discussed an associate who was in a car accident.  The Defendant said he "was going to put [his drug] charge on him if he was dead" because "dead nig**s can't really talk."

On April 13, 2016, the Defendant told Co-Defendant 8 to call "Lil Man" and tell him he owes the Defendant "a PayPal" and "if he ain't got it, yo, tell his bit** ass don't come around the way no more or y'all gonna beat him up."

On April 23, 2016, the Defendant reminisced about when he, Co-Defendant 1, Co-Defendant 2, and now-deceased MMP member James Edwards "used to just pull up on the block" like they were "untouchable." The Defendant continued: "We used to ride around like the police couldn't touch us, I'm talking broad daylight, I'm talking about main streets too," like "Monroe," "Pratt," "Monument Street," and "Pennsylvania Avenue."  Co-Defendant 8 asked: "Like you just walk around with a joint out or something?"  The Defendant replied, "No, like, handling situations, like, hopping out and putting nig**s in they place, … like, 'Everybody lay the fu** down.'"

On September 27, 2016, law enforcement officers executed a federal search warrant at the residence of Co-Defendant 8.  Among other things, they recovered letters written by the Defendant to Co-Defendant 8 requesting that Co-Defendant 8 smuggle narcotics into the jail for the Defendant by sending it through the mail and disguising the envelope to look like legal mail.

The Defendant agrees that he conspired with other members of MMP to distribute one kilogram or more of heroin and 280 grams or more of cocaine base in furtherance of the gang, and that it was reasonably foreseeable to him that between one and three kilograms of heroin and between 280 and 840 grams of cocaine base would be distributed by members of the conspiracy.

ECF 1018 at 11–12.

A presentence report was prepared in connection with sentencing.  ECF 1219.  The PSR showed that Dent's prior criminal convictions scored nine criminal history points, and that he received two "status points" under U.S.S.G. § 4A1.1(d) because he was on parole in a Baltimore City criminal case at the time the instant offense was committed, placing him in criminal history category V.  *Id.* ¶¶ 47–49.  However, Dent was a career offender pursuant to U.S.S.G. § 4B1.1(b)

because he had two or more prior felony convictions for controlled substance offenses. *Id.* ¶ 49. Therefore, he was elevated to a criminal history category VI, independent of his criminal history score. *Id.* ¶¶ 32, 49, 110; *see also* ECF 1227 (Statement of Reasons), at 1.

Per the plea agreement, the parties agreed that the offense level for the racketeering conspiracy was 30 pursuant to U.S.S.G. § 2E1.1(a) and § 2D1.1(c)(5). The government recommended a 2-level increase in the offense level pursuant to U.S.S.G. § 2D1.1(b)(4) because one of the objects of the offense was the distribution of a controlled substance in a prison, correctional facility, or detention facility. ECF 1018, at 5. Dent opposed this increase. *Id.* Regardless, because Dent was a career offender, the offense level was elevated to 37. ECF 1219, at ¶ 32; ECF 1227 (Statement of Reasons), at 1. There was then a two-level reduction in the offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a), bringing the total offense level to 35. ECF 1219, at ¶¶ 33–34; ECF 1227, at 1. Pursuant to the Rule 11(c)(1)(C) plea agreement, the parties agreed that the appropriate sentence was between 120 and 180 months of incarceration on each count of conviction, to run concurrently with each other and with Dent's state sentence in Baltimore City Circuit Court Docket No. 115169003. ECF 1018, at ¶ 9; ECF 1219, at ¶ 108.

At the sentencing on February 27, 2019, the district court adopted the PSR's offense level calculation of 35 and criminal history calculation of VI, resulting in a guidelines range of 292 to 365 months. ECF 1227 (Statement of Reasons), at 1. The court sentenced Dent to 168 months, which was roughly ten years below the bottom of the guidelines range, but which took into account the time Dent had already served in state custody for related conduct. ECF 1227; *see also* ECF 1687 (Order Granting Amended Judgment).

5

**ARGUMENT**

Federal law provides that a court may reduce a sentence after it has been imposed where the defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o)." 18 U.S.C. § 3582(c)(2). The court may reduce such a sentence only "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

The Fourth Circuit has held that district courts must employ a two-step approach in considering 3582(c)(2) motions. "First, a court must determine the defendant's eligibility. Section 3582(c)(2) permits a reduction only if (1) the defendant's 'term of imprisonment [was] based on a sentencing range that has subsequently been lowered by the Sentencing Commission,' and (2) the reduction 'is consistent with applicable policy statements issued by the Sentencing Commission.' § 3582(c)(2). Second, the court may grant the authorized reduction 'after considering the factors set forth in section 3553(a) to the extent that they are applicable.'" *United States v. Peters*, 843 F.3d 572, 574 (4th Cir. 2016) (citing § 3582(c)(2)). "The ultimate decision of '[w]hether to reduce a sentence and to what extent' is committed to the district court's discretion." *Id.*

Here, despite receiving a below-guidelines sentence in accordance with his plea agreement, Dent has filed a petition seeking a sentence reduction under Amendment 821 of the guidelines. While this amendment has been made retroactive, it is clear that Dent is not eligible for any relief. And even if he were, this Court should decline to exercise its discretion under the 3553(a) factors.

A.      **Dent Is Not Eligible For a Sentence Reduction**

As described above, a court may only modify a term of imprisonment if the sentencing range that was used to establish the defendant's sentence has subsequently been lowered by the Sentencing Commission. 18 U.S.C. § 3582(c)(2); *see also* U.S.S.G. § 1B1.10(a)(2)(B) (providing that a defendant is not eligible for a sentence reduction if the retroactively applicable amendment "does not have the effect of lowering the defendant's applicable guidelines range"). Any such modification must also be consistent with applicable policy statements issued by the Sentencing Commission. One such policy statement provides that courts may not reduce a sentence "to a term that is less than the minimum of the amended guideline range" unless the defendant's original sentence resulted from a downward departure based upon substantial assistance to government authorities. U.S.S.G. § 1B1.10(b)(2); *United States v. Dunphy*, 551 F.3d 247, 252 (4th Cir. 2009) (holding that § 1B1.10 is "a jurisdictional bar to reducing sentences below the range authorized by the Commission").

Here, Dent's sentencing range has not been lowered by the Sentencing Commission. Part A to Amendment 821 to the Sentencing Guidelines amended U.S.S.G. § 4A1.1(d) to strike the two "status points" previously assessed for defendants who committed their offense while under any criminal-justice sentence. The new provision U.S.S.G. § 4A1.1(e) instead assesses a single "status point" for those who have 7 or more criminal history points. Dent had nine natural criminal history points and would have received two "status points" under the old § 4A1.1(d), but because he was a career offender under U.S.S.G. § 4B1.1(b), he was bumped up to criminal history category VI—the highest category. *See* ECF 1219, at ¶¶ 32, 49, 110. The "status points" did not affect Dent's criminal history category, which would have been the same based on his career offender status alone. Because Amendment 821 does not apply to Dent and does have the effect of lowering

7

Dent's guidelines range, he is ineligible for relief. U.S.S.G. § 1B1.10(a)(2)(B); *United States v. Nickens*, 668 F. App'x 20, 21 (4th Cir. 2016) (defendant not eligible for reduction where amendment does not have the effect of lowering applicable range); *United States v. Williams*, Crim. No. 2:20-cr-01-01, 2024 WL 947841 (S.D.W.V. Mar. 5, 2024) (defendant ineligible for a sentence reduction under Amendment 821 where guidelines range was "the result of his classification as a career offender").

In addition, a sentence reduction would not be consistent with the applicable policy statements by the Sentencing Commission. As discussed above, Dent was sentenced to 168 months. This sentence was already nearly ten years below the then-applicable guidelines range of 292 to 365 months, which is still the guidelines range today. Accordingly, Dent's sentence may not be further reduced. U.S.S.G. § 1B1.10(b)(2)(A); *see also United States v. Spruhan*, 989 F.3d 266, 268-69 (4th Cir. 2021) (affirming the denial of a sentence reduction under § 3582(c)(2) because the defendant's sentence as stipulated in a Rule 11(c)(1)(C) plea agreement was already below the minimum of the amended guideline range); *accord United States v. Berberena*, 694 F.3d 514 (3d Cir. 2012) (affirming denial of sentence reduction where defendant was sentenced to 135 months and the amended guidelines range was not lower than 135 months).

Accordingly, because Dent cannot establish eligibility for a reduction, his motion must be dismissed.

**B.      Even if Dent Were Eligible, the Court Should Still Deny a Reduction Based Upon the § 3553(a) Factors.**

Alternatively, even if he were eligible for a sentence reduction under Amendment 821, Dent's motion should still be denied based on the factors outlined in 18 U.S.C. § 3553(a). For many years, Dent trafficked deadly narcotics in furtherance of a murderous gang. He did so with full knowledge that its members used murder to silence rivals—indeed, Dent stood alongside a

8

fellow gang member while he pumped bullets into S.H.'s head and body in 2012. Dent's crimes were not isolated incidents but were part of a broader pattern of criminal behavior that included multiple prior convictions for possession with intent to distribute and conspiracy to distribute narcotics, as well as convictions for unauthorized removal of property and fraud in personal identification. *See* ECF 1219, at ¶¶ 39–46. His decision to participate in this gang conspiracy despite having served prior prison sentences for similar misconduct demonstrates a clear disregard for the law and the safety of others. The 168-month prison term serves to reflect the gravity of the offense, deter both Dent and others from similar criminal conduct, and protect the public from further crimes by Dent.

## CONCLUSION

Based on the foregoing, the Government respectfully requests that the Court deny Dent's motion for a reduced sentence.

                                          Respectfully submitted,

                                          Kelly O. Hayes,
                                          United States Attorney

By:____/s/_____
           Christina A. Hoffman
           Assistant United States Attorney
           36 South Charles Street
           Fourth Floor
           Baltimore, Maryland 21201
           (410) 209-4800

## **CERTIFICATE OF SERVICE**

I hereby certify that this response in opposition was filed with the Court via CM/ECF, and that a hard copy was served on the defendant by U.S. Mail addressed as follows:

DEVON DENT
Register Number: 62564-037
USP Victorville
P.O. Box 3900
Adelanto, CA 92301

                        By:____/s/_____
                              Christina A. Hoffman
                              Assistant United States Attorney
                              36 South Charles Street
                              Fourth Floor
                              Baltimore, Maryland 21201
                              (410) 209-4800